## 23964. PUBLIC INDEMNITY COMPANY OF NEWARK *v.* YEARWOOD.

DECIDED FEBRUARY 2, 1935. REHEARING DENIED FEBRUARY 21, 1935.

*Walter DeFore, James C. Estes, Harris, Russell, Popper & Weaver,* for plaintiff in error.

*Miller & Lowrey,* contra.

SUTTON, J. The plaintiff brought suit against one Peabody for the homicide of her minor son, alleged to have been caused by the negligent operation of the defendant's automobile by one Ingram. The defendant demurred to the petition, the demurrer was sustained, and that judgment was affirmed by this court, holding that Ingram occupied the status of an independent contractor at the time of the death of the plaintiff's son. *Yearwood* v. *Peabody,* 45 *Ga. App.* 451 (164 S. E. 901). Peabody was named as the insured in a policy of automobile liability insurance. Thereupon the plaintiff brought suit against the insurer on said policy of insurance. The case was submitted to the trial judge on an agreed statement of facts, and judgment was entered against the insurer, the court holding that the policy of insurance covered Ingram at the time he was operating Peabody's automobile and ran over the plaintiff's son and killed him. To this judgment the insurer excepted on the ground that it was contrary to law and to the evidence. From the agreed statement of facts it appears that the insured had hired Ingram to repair his automobile, giving to Ingram permission to keep the automobile overnight; that while Ingram was operating the automobile in connection with his repair work thereon, he ran upon and killed the plaintiff's son; that the policy of liability insurance was a regular standard form, and provided that the insurance protection therein provided for was extended so as to cover the operation of the automobile by any one with the permission of the named insured, in and about the business and pleasure of the named insured, but that such extension should not apply and be available to "any public garage, automobile repair shop," etc.

While it is true that policies of insurance should be construed so as to attain the object of the insurance and most favorably to the insured and against the insurer, yet "the contract of insuranc should be construed so as to carry out the true intention of the parties" (Code of 1910, §§ 2475, 4266); and every other rule of construction of contracts, including insurance contracts, is subservient to this one. *Bridges* v. *Home Guano Co.*, 33 *Ga. App.* 305, 309 (125 S. E. 872); *Clay* v. *Phœnix Ins. Co.*, 97 *Ga.* 44, 53 (25 S. E. 417). The ordinary and legal meaning of words employed in an insurance policy must be taken into consideration. *North British &c. Ins. Co.* v. *Tye*, 1 *Ga. App.* 380 (58 S. E. 110). So construing the policy of automobile-liability insurance in this case, it is plain that the insurance protection provided thereby was not intended to cover the automobile driven by Ingram, the policy expressly providing that the insurance therein was not available to "any public garage," or "automobile repair shop," and there being no substantial difference, for the purposes of automobile-liability insurance, between an individual undertaking to repair an automobile for the owner thereof and a "public garage" or "automobile repair shop." It necessarily follows that the judgment against the insurer in this case was contrary to law and the evidence, and the court erred in rendering the same.

*Judgment reversed. Stephens, J., concurs. Jenkins, P. J., dissents.*

JENKINS, P. J., dissenting.. While a contract of insurance, like any other contract, should be so construed as to carry out the true intention of the parties (Civil Code, §§ 2475, 4266), yet if any doubt should exist, in the construction of such a contract, in determining the true intent, the doubt should be resolved in favor of the insured. *Penn Mutual Life Ins. Co.* v. *Milton*, 160 *Ga.* 168, 171 (127 S. E. 140, 40 A. L. R. 1382); *Johnson* v. *Mutual Life Ins. Co.*, 154 *Ga.* 653, 655 (115 S. E. 14); *Mutual Life Ins. Co.* v. *Durden*, 9 *Ga. App.* 797 (10), 804 (72 S. E. 295). Likewise, any exception in a policy of insurance altering the terms of general liability is to be taken and construed most strongly against the insurer. *Insurance Co. of North America* v. *Samuels*, 31 *Ga. App.* 258 (120 S. E. 444); *Empire Life Ins. Co.* v. *Einstein*, 12 *Ga. App.* 380 (4), 386 (77 S. E. 209). By the terms of the insurance contract in the instant case, the policy is "so extended as to be avail-

able, in the same manner and under the same provisions as it is available to the named insured, to any person or persons while riding in or legally operating any of the automobiles described, . . provided such use or operation is with the permission of the named assured, . . except that the extension provided for in this condition shall not be available to (1) any public garage, automobile repair shop, automobile sales agency, automobile service station, or the agents or employees thereof, (2) the purchaser, transferee, or assignee of any of the automobiles described, . . except by the written consent of the company endorsed hereon." Under another paragraph in the policy, after a final judgment in favor of any injured person or other party having the right of action, it was provided that suit against the company on the policy and the judgment could be maintained. The judgment was recovered by the mother of a boy, who was killed by the automobile covered by the policy. In the present suit on this judgment and the policy, the company contends that it is not liable because the driver of the car, one Johnny Ingram, was not included in the extension of the policy to other insured persons "operating" the car with "the permission of the named assured," but was excluded by the exception as to "any public garage, automobile repair shop, [or] automobile service station, or the agents or employees thereof." The question is, whether or not, under the proper rules of construction, the exception in the policy excludes the driver of the car to whom it had been entrusted by the "named insured." In other words, was the domestic servant and chauffeur of a third person, to whom it was entrusted by the named assured for repairs, the proprietor or agent or employee of a "public garage, automobile repair shop," or "automobile service station?"

As I see the case, construing the contract and the exception most strongly against the insurer, but even, in the absence of any such rule, merely arriving at the meaning of the policy by taking "the ordinary and legal meaning of words employed," the driver operating the automobile at the time of the injury can not be taken as coming within any of the quoted exceptions. Under the stipulated facts, this driver, "Johnny Ingram, was a young negro man twenty-one years of age, and regularly employed in the capacity of a domestic servant and chauffeur by a prominent citizen of Macon . . every day in the week, including Sunday . . and had never been

engaged in or exercised any other business or employment of any character except that of a domestic servant. From time to time he did odd jobs for other people when not engaged as a servant. The said [owner of the automobile, the named insured] sent word to the said Ingram to come to see him; and when Ingram saw [the owner], he desired Ingram to do some work upon his Chrysler roadster, the work to be done during the hours Ingram was off from his employment. [The owner] employed Ingram to do certain specified work on his automobile, . . and agreed to pay him for his work the sum of $10. At the time of this employment, which was around 4 or 5 o'clock Saturday afternoon, December 13, 1930, [the owner] instructed him to take the car and to bring it back to him the following afternoon by 6 o'clock, and that if he brought it back after 6 o'clock, simply to leave the car at the house. Ingram took the car from [the owner's] home to the Pan-American Filling Station . . for the purpose of working on it late that afternoon and night, and so as to get the benefit of the light at the filling-station. . . [He] had not finished working on the car at about 12 o'clock midnight, of December 13th, the timing gear of the motor still requiring adjusting." While he was driving the car and adjusting the timing gear, the injury occurred. "Ingram was not in the regular business of repairing automobiles, and was doing this work for [the owner] to make a little extra money for Christmas. [The owner] knew who Ingram was and that he was regularly employed as a chauffeur and domestic servant by [Ingram's employer]. The said Ingram was not an agent or employee of the filling station where the work was done, nor was the filling station in any way interested in the work Ingram was doing, . . but simply permitted the use of their premises as a matter of accommodation to the said Ingram." Under this stipulation, it does not seem that Ingram, the driver of the car, could possibly fall within any of the stated exceptions, unless the term "automobile repair shop" could be properly applied to him. A "shop" as defined in the dictionaries and by the courts means either a house, building, or room where goods, wares, drugs, or like merchandise is sold, or a house, building, or room where artisans, mechanics, or laborers carry on their craft, trade, or business by the use of machinery or tools. A "repair shop" is defined as a "shop" for making repairs, especially of machinery. A "workshop" is a build-

ing or room where any work is carried on, especially a handicraft. Standard Dictionary; 7 Words & Phrases, 6493, 6494, and cit.

Giving then to the words "automobile repair shop" their well-established meaning, the insurance contract, under any of the agreed facts or any rule of construction, can not, as I see it, be so extended as to exclude this domestic servant of a third person. He had never "exercised any other business or employment." Even the nature of his odd jobs while not busy for his employer are not specified in the statement of facts under which the case was submitted. The owner of the car knew all this, and employed this domestic servant simply to do the particular job in question for the agreed amount, the driver doing the work to "make a little extra money for Christmas." Not being the proprietor or part proprietor of any "automobile repair shop" or agent or employee of such a shop, or, so far as the facts show, even owning the machinery or tools used in the particular work, and not being a regular automobile mechanic or carrying on the trade of such, or even, so far as appears from the record, ever having done automobile repair work for others before this special job, he can not, by the broadest construction possible, be deemed an "automobile repair-shop."

Examining the language of the paragraph with the exceptions to ascertain if possible the true intention of the parties, this conclusion seems imperative. The manifest purpose of the extension clause of the policy was to extend the coverage to other persons riding in or operating the car with the permission of the named insured. The owner in such cases could be the judge and could control whom he would allow to operate his car and exercise his knowledge and judgment as to the qualifications of the operator and the safety of operation, with consequent protection to this extent to the insurer. The manifest purpose of the *exception* clause was to exclude liability while the car was in the hands of a "public garage" or "repair shop," or its agents or employees, since in such a case the owner would ordinarily have no control or even knowledge of the various individuals who might operate the car. Any person who might be employed or directed by the public garage, shop, agency, or service station, without regard to qualifications, and without regard to "permission" from the owner, could drive the car, with resulting danger and prejudice to the rights and liability of the insurance company.

Nothing held by the court in its former decision, delivered by the writer, in *Yearwood* v. *Peabody,* supra, holding, in a suit by the mother of the deceased against the owner of the car alone, that as to him the driver of the car was an "independent contractor" for whose acts the owner would not be liable, affects the instant case. It was there expressly stated: "The fact that such employee *might not be generally engaged in the particular business or occupation carried on by him under his special contract with the employer* would not prevent the relation between them from being that of· employer and independent contractor, if the work undertaken was not under a contract whereby the relationship of master and servant arose." (Italics mine.) Upon the dismissal of that suit against the owner of the car employing the driver as "independent contractor," suit was filed and a judgment was obtained against the driver alone, and the instant suit was then brought on that judgment and the insurance policy. Under the terms of the insurance contract, it was immaterial whether the driver to whom the car was entrusted was the agent or servant of the owner, or whether he occupied the status of independent contractor as to the particular job. The only condition of liability under the terms of the policy was whether he was driving the car with the "permission" of the owner, unless he fell within the exceptions discussed. There is no question as to such permission. This was not merely implied, but express and specific to the driver as an individual. Under the stipulated facts, he personally was directed to take the car away, do the work on it, and drive it back at a designated time to the home of the owner. The "timing gear" was being adjusted while he was driving at the time of the injury. In view of these express instructions from the insured owner, which the driver was carrying out, the driver could not, in my opinion, under either the letter or the spirit and intent of the exceptions, be deemed the proprietor or servant of a public garage, shop, agency, or service station. On the other hand, this individual driver, even though an independent contractor to do the particular work contracted for, continued to the time of the injury to operate the car with the express "permission" of the owner.