**QUEEN INSURANCE COMPANY OF AMERICA, Appellant,**

v.

**William CREACY et al., Appellees.**

No. 14836.

Court of Civil Appeals of Texas, San Antonio.

June 17, 1970.

Rehearing Denied July 15, 1970.

Franklin D. Houser, House, Mercer, House & Brock, San Antonio, for appellant.

Groce, Hebdon, Fahey & Smith, Charles R. Shaddox, San Antonio, for appellees.

KLINGEMAN, Justice.

This is a suit upon an insurance contract to determine coverage, rights of contribution or indemnity, and recovery of attorneys' fees. William Creacy, hereafter called Creacy, Roy Davis, hereafter called Davis, and Employers Casualty Company, hereafter called Employers, the appellees herein, sued Queen Insurance Company of America, hereafter called Queen, based upon Queen's failure to defend Creacy and Davis in a damage suit filed against them by Joe Baker arising out of an automobile accident, and Queen's failure to pay the judgment rendered against them. Trial

was to a jury. After the jury verdict, the trial court granted appellees' motion to disregard the jury's answers to three of the Special Issues submitted[1] and for judgment non obstante veredicto, and judgment was rendered for appellees in the amount of $10,000.00,[2] plus attorneys' fees in the amount of $1,188.00.[3]

Creacy was the named insured in a family automobile policy issued by Queen. He was employed by Davis, d/b/a Davis Automotive Supply, as an auto parts salesman. Joe Baker owned and operated a machine shop situated in Davis Automotive. In November, 1966, a Mr. Espinosa was having some trouble with the accelerator pedal of a 1954 Mercury station wagon which he owned, as he drove the vehicle to the front of Davis Automotive, went into the store and told Creacy that he was having some trouble with his accelerator pedal sticking. After some discussion, Creacy and Baker went out to the car. The motor was running with the door of the car open. Creacy partially lay on the seat of the automobile and reached down to the accelerator with one hand and jiggled it. The car suddenly moved forward and pinned Baker between the car and the building, severely injuring Baker. Baker thereafter filed suit against Creacy and Davis, who tendered their claim and defense to Queen requesting coverage. Queen refused to provide either. Thereafter, Davis and Creacy, with the help of Employers, the insurer of Davis' premises under an owner's, landlord and tenant liability policy, defended the suit. Judgment was rendered for Baker against Creacy and Davis in the amount of $14,750, which judgment was satisfied by Employers. Creacy and Davis assigned all their rights and claims to Employers. Queen by stipulations agreed that any assistance or settlement of such suit did not constitute a waiver of any rights of Creacy, Davis or Employers, and that Queen would not raise any contention that Employers was acting as a volunteer.

Appellant by its first two points of error asserts that the trial court erred in granting appellees' motion for judgment non obstante veredicto and disregarding the jury's

---

1. QUESTION NO. 1: Do you find from a preponderance of the evidence, that at the time, and on the occasion in question, the Plaintiff, WILLIAM CREACY, was using the 1954 Mercury automobile, as the term "using" is hereinafter defined?
   Answer by stating "He was using", or "He was not using".
   We, the Jury answer "He was not using"
   You are instructed that the term "using" in the above question means the occupying of the vehicle, or the operation of said vehicle, so as to bring it into action or service or apply it to a given service. By "service" is meant putting the vehicle to a given purpose so as to accomplish the desired end or result.
   QUESTION NO. 2: Do you find from a preponderance of the evidence, that at the time, and on the occasion in question, the Plaintiff, WILLIAM CREACY, was using the 1954 Mercury automobile in the automobile business, as the term "automobile business" is hereinafter defined?
   Answer by stating "He was using it in the automobile business" or "He was not using it in the automobile business."

   We, the Jury answer "He was using it in the automobile business"
   You are instructed that the term "automobile business" in the above question, means the selling, repairing, servicing, storing or parking of automobiles.
   QUESTION NO. 3: Do you find from a preponderance of the evidence, that at the time, and on the occasion in question, the Plaintiff, WILLIAM CREACY, was maintaining the 1954 Mercury automobile as the term "maintaining" is hereinafter defined?
   Answer by stating "He was maintaining" or "He was not maintaining."
   We, the Jury answer "He was not maintaining."
   You are instructed that the term "Maintaining" means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse or cessation from that state or condition.

2. Queen's policy limit was $10,000.00 per person injured.

3. The jury found the sum of $1188.00 to be reasonable and necessary attorneys' fees.

answers, and in refusing to grant appellant a judgment under the law, facts and verdict.

Creacy was the named insured in the Queen policy. In such policy, Queen contracted and agreed to pay all sums which the insured "shall become legally obligated to pay as damages because of: A. bodily injury * * * arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile," as therein defined, and to defend any suit alleging such injury. The policy provided that the person insured under such policy with respect to a non-owned automobile included not only the named insured, but also any other person or organization legally responsible for the use of such automobile, if the actual use was by a named insured. The policy contained certain exclusions: "This policy does not apply * * * (h) to a non-owned automobile while used (1) in the automobile business by the insured * * *."

We first determine whether there is any evidence to support the jury's finding that Creacy was not using or maintaining the 1954 Mercury automobile on the occasion in question. It is to be noted that appellant devotes no part of its brief in support of such findings but candidly states in its brief: "The only question to be decided is whether there is in the record evidence of probative force to support the jury's finding that the automobile in question was being used in the 'automobile business' at the time of the accident."

■ We hold, as a matter of law, that at the time and on the occasion of the accident Queen's named insured, Creacy, was using or maintaining the non-owned automobile in question within the coverage provisions of Queen's policy. State Farm Mutual Automobile Ins. Co. v. Pan American Ins. Co., 437 S.W.2d 542 (Tex.Sup. 1969); [4] Red Ball Motor Freight, Inc. v. Employers Mutual Liability Ins. Co. of Wisconsin, 189 F.2d 374 (1951, Fifth Circuit); Fidelity & Casualty Co. of New York v. Lott, 273 F.2d 500 (1960, Fifth Circuit); Panhandle Steel Products Co. v. Fidelity Union Casualty Co., 23 S.W.2d 799 (Tex.Civ.App.—Fort Worth 1929, no writ); Case v. Fidelity & Casualty Co. of New York, 105 N.H. 422, 201 A.2d 897 (1964); 12 Couch on Insurance 2d § 45:64, p. 153; Appleman, Insurance Law & Practice, Vol. 7, § 4316(e).

We next consider whether there is in the record evidence of probative value to sup-

4. A good discussion of the terms "use" and "maintenance" is found in the recent case of State Farm Mutual Automobile Ins. Co. v. Pan American Ins. Co., 437 S.W.2d 542, wherein the Supreme Court held that the act of refueling a pick-up vehicle constituted "maintenance" of the vehicle within the insuring clause of an owner's automobile liability policy covering ownership, maintenance, and use of an automobile. In such opinion, the Court said: "It was stated by the Supreme Court of Pennsylvania that maintenance 'covers all acts which come within its ordinary scope and meaning,' and, further, that 'To "maintain" means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse, or cessation from that state or condition.' Morris v. American Liability & Surety Co., 322 Pa. 91, 185 A. 201, 202 (1936). Compare Automatic Fire Alarm Co. v. Bowles, 143 F.2d 602 (Emer.Ct.App. 1944), where in another context it was recognized that maintenance doubtless includes the idea of keeping in repair, but has a much broader meaning involving the concept of supporting, sustaining, carrying on and continuing. It appears inescapable that the replacement of fuel which has been exhausted with use and without which a motor vehicle is inoperative, is a species of maintenance in the same sense as repairing the carburetor as a part of the fuel system, or inflating a flat tire, or changing the oil in the crankcase of the engine. The only purpose of the act of refueling by Western was to capacitate the Liggett vehicle to perform its transportation functions. This act, standing alone, constituted 'maintenance' of the vehicle and was a distinct relationship expressly included within the terms of the insuring clause but excluded, by its omission, from the coverage of the omnibus clause."

port the jury's finding that the automobile in question was being "used in the automobile business" at the time of the accident. Four persons were present at the time and on the occasion of the accident. Espinosa, the owner of the automobile involved did not testify, having died. Baker, the injured party, was not called to testify by either party. His availability or whereabouts are unaccounted for. Creacy and Davis testified that Davis Automotive was solely engaged in the automobile parts business; that it did not do repairs on automobiles; that it was not a garage and did not perform any type of work on automobiles. Creacy testified that he was not a mechanic; that his job was to sell automobile parts; that at all times she worked for Davis Automotive he did not do any repair work or service work on automobiles; that on some occasions, in connection with the selling of automobile parts, he would examine the car of customers to determine what part was desired, and after selling such part he would refer them to a garage or service station to fix the car. He testified that on the occasion of the accident, he told Espinosa that he did not work on automobiles; that as a good Samaritan he went out to Espinosa's car to help him figure out what was wrong.

█ It is the general rule that the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury. But there is an exception to this rule, which is that where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cast suspicion thereon, it is taken as true as a matter of law. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1942). See also Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.Sup.1965); McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d

722 (Tex.Comm'n App.1943, opinion adopted).

Appellant's case is largely predicated upon its contention that if there is any evidence to support the fact that Davis Automotive was engaged in the business of repairing autos, or that Creacy was in some manner repairing or attempting to repair Espinosa's automobile, its defense is established. However, even if it be conceded that Davis Automotive on some occasions did repair work on automobiles or that Creacy was doing some type of repair on the Espinosa automobile, this would not be determinative of whether or not Espinosa's automobile was being "used in the automobile business" at the time of the accident.

The exclusionary clause involved in the Queen policy is the "old" exclusion which purported to eliminate coverage for automobiles "while used in the automobile business," rather than the "new" exclusion applying to automobiles "while used by a person employed or otherwise engaged in the automobile business." See Tindall Pontiac, Inc. v. Liberty Mutual Insurance Co., 441 S.W.2d 948 (Tex.Civ.App.—San Antonio 1969, writ ref'd w. o. j.). This policy form was changed in Texas subsequent to the Court's holding in Western Alliance Ins. Co. v. Cox, 394 S.W.2d 238 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.).

The "old" exclusion, contained in Queen's policy, has been held inapplicable in a number of cases throughout the country. In Hammer v. Malkerson Motors, Inc., 269 Minn. 563, 132 N.W.2d 174 (1964), it was held that an automobile brought by its owner to a garage for repairs and involved in an accident while the garage employee was moving it from a parking lot into the garage was not being used in the "automobile business" within a clause in the owner's automobile liability policy excluding from coverage an owned automobile while used in the automobile business.

The Supreme Court of Washington in McCree v. Jenning, 55 Wash.2d 725, 349 P.2d 1071 (1960), said: "It would appear evident, therefore, that an automobile 'used in the automobile business' would be one which was employed for some purpose in connection with that business. For example, a tow truck, or a vehicle used for securing or delivering equipment and supplies would be 'used in the business.' But the Jenning automobile was not turned over Miller to be used by him for his business. It was simply brought to him to be repaired."

The exclusionary clause in the policy involved in the case of Case v. Fidelity & Casualty Company of New York, supra, excluded liability to an owned automobile while used in the automobile business. The Supreme Court of New Hampshire stated: "We are of the opinion that the language is not intended to exclude coverage because the automobile happens to be in the possession or under control of a person whose business is automobiles. Nor can it reasonably be interpreted to deny coverage by the mere fact that a repairman is using a customer's car in the process of servicing it. On the contrary, a reasonable person in the position of an insured would understand it to mean that coverage would be excluded when the automobile was employed for some purpose in connection with the automobile business. Plaintiff's car was at this service station to be repaired, not to be 'used in the automobile business.'"

The above cases were cited with approval by the Waco Court in Western Alliance Ins. Co. v. Cox, supra, which case involved the construction of the "old" type of automobile exclusionary clause. The Court held that an automobile owned by the insured which was involved in a collision while being returned to the service station for servicing from insured's place of employment was not being "used in the automobile business" within the exclusion to collision provision of the automobile policy. The latest Texas decision we have

found containing the "old" type of exclusionary clause is Allstate Ins. Co. v. Universal Underwriters Ins. Co., 439 S.W.2d 385 (Tex.Civ.App.—Houston 1969, no writ). This case was a suit by a garage's liability insurer against an automobile owner's liability insurer to recover the amount the garage liability insurer had paid in settlement of a claim by a party injured in a collision with the owner's automobile at a time it was being driven by a garage employee to the shop for repairs. The Court held that at the time of the collision the automobile was not being used in the automobile business within the meaning of the clause in the owner's liability policy excluding coverage while the automobile was being "used in the automobile business." The Court noted this exclusion was based on the character of the use being made at the time, not on the character of the business of the person using it.

■ We hold as a matter of law that the non-owned automobile here involved was not being used in the automobile business within the terms of said exclusion at the time and on the occasion of the accident.

■■ Appellant by its third point of error asserts that the trial court erred in allowing Employers to recover from appellant (1) because Employers owed a duty to defend and pay under its policy, (2) the assignment relied upon was without consideration or validity, (3) appellant's insurance was excess only. Appellant's point of error No. 4 complains that the trial court erred in allowing the recovery of attorney's fees because they were paid by appellees upon their contractual obligation to defend under their policy. Appellee urges by counter-point that we not consider these points because they were not preserved by proper assignments of error in appellant's motion for new trial. Appellant has not pointed out any assignment of error in its motion for new trial which is germane to such points, nor have we been able to find any after a careful reading of appellant's

motion for new trial. A motion for new trial is not a prerequisite to the right to complain of the trial court's action in rendering judgment non obstante veredicto; however, in such event appellant may complain on appeal only of the granting of the motion for judgment non obstante veredicto. Rule 324, Texas Rules of Civil Procedure; Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960). Since the alleged errors asserted in appellant's third and fourth points are unrelated to appellees' judgment non obstante veredicto and are not germane to its assignment of error in appellant's motion for new trial, same must be considered as waived.

All of appellant's points of error are overruled. The judgment of the trial court is affirmed.