48204. UNITED STATES FIDELITY & GUARANTY
COMPANY v. BOYETTE et al.

SUBMITTED MAY 8, 1973 — DECIDED SEPTEMBER 20, 1973 —
REHEARING DENIED OCTOBER 9, 1973 —

*Owens & Hilyer, Seymour S. Owens,* for appellant.
*Edward Parrish,* for appellees.

CLARK, Judge. This appeal involves a coverage question under the standard private automobile public liability insurance policy containing the language that "This policy does not apply: (g) To any automobile or trailer while maintained or used by any person while such person is employed or otherwise involved in the automobile business. . ."

Harnage to whom we will refer as "car owner" carried a public liability policy with United States Fidelity & Guaranty Company on his personal Chevrolet station wagon. Boyette, hereafter referred to as "service station operator," carried a similar liability policy with the State Farm Mutual Automobile Insurance Company. Apparently, this was on his personal automobile because his State Farm policy contained the same exclusion as was in the car owner's U. S. F. & G. policy even though Boyette was in the service station business. This exclusion stated "This policy does not apply: (g) To any automobile or trailer while maintained or used by any person while such person is employed or otherwise engaged in the automobile business. . ." Both policies contained this special definition: "'Automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles."

The automobile owner left his insured Chevrolet at the service station to be greased and serviced. The stipulation of facts agreed that "As accommodation to his customer, Jack Harnage [the car owner], L. L. Boyette, Sr. [the service station operator] promised Jack Harnage to return the motor vehicle to Jack Harnage at Harnage's place of employment. After L. L. Boyette, Sr. had serviced said Chevrolet station wagon, he, L. L. Boyette, Sr. was returning the automobile to Jack Harnage and L. L. Boyette, Sr. was driving it for that purpose" (R. 54), when he had a collision with another car in which personal injuries were sustained by Carol Hall. She brought suit against both the service station operator and car owner for damages arising from that collision with the plaintiff therein recovering a final judgment jointly against the service station operator and the car owner in the total amount of $7,270.20. The stipulation between the parties does not contain the complaint and does not show who paid one-half of the judgment but does state that one-half was paid by the service station operator who also incurred attorney fees in the sum of $500 in the defense of that action.

The instant suit was brought by the service station operator against both the U. S. F. & G., that being the car owner's insurer,

and State Farm which had issued the service station operator its public liability policy, for the one-half of the judgment paid by him plus the $500 attorney fee expense.

This matter was presented by stipulation of facts to the court for decision without the intervention of a jury. The trial judge accepted the stipulation as constituting the findings of fact. The court's finding of law was that neither insurance company was relieved of liability under the exclusion reciting that "The court concludes as a matter of law that the plaintiff Boyette, in delivering the automobile to Harnage, its owner at the time of the alleged casualty was, as a matter of law, the agent of Harnage and Harnage was not employed or otherwise engaged in the automobile business; accordingly the plaintiff Boyette was, while acting as such agent of Harnage, not employed or otherwise engaged in the automobile business." (R. 70).

Since the insured automobile was an "owned automobile" under the U. S. F. & G. contract and a "non-owned automobile" under the State Farm policy the court further ruled State Farm would only be liable for excess coverage. As the primary coverage limits of U. S. F. & G. sufficed to pay the entire judgment the court exonerated State Farm which has not participated in this appeal. *Held:*

1. This is the fourth case in which this court has been called upon to consider the applicability of this "automobile business" exclusion clause. In the three previous cases we ruled there was no coverage. The first of these decisions was *Public Indemnity Co. of Newark v. Yearwood,* 50 Ga. App. 646 (179 SE 232) which is among those cases from a number of jurisdictions cited in 7 Blashfield Automobile Law & Practice (3d Ed.) § 315.16, page 638, as holding that there is no liability upon the insurer where the incident occurs while one in the specified class is driving, even though the driver might be acting at the specific request and for the benefit of the insured. The *Yearwood* case reasons at page 647 that "While it is true that policies of insurance should be construed so as to attain the object of the insurance and most favorably to the insured and against the insurer, yet 'the contract of insurance should be construed so as to carry out the true intention of the parties' [Code citations]; and every other rule of construction of contract, including insurance contracts is subservient to this one [citations]. The ordinary and legal meaning of words employed in an insurance policy must be taken into consideration.[Cit.]"

In our next decision, *Allstate Insurance Co. v. McBride,* 117 Ga.

App. 592 (161 SE2d 415), it was recognized that the *Yearwood* case was not a precedent because it was a two-one decision. The court also pointed out that there the exclusion was based on a narrower provision in the policy than that in the *McBride* case where the language was exactly similar to that contained in the case sub judice. In the *McBride* case, as in the instant appeal, the policy defined what was meant by "automobile business." This definition reads: "The business or occupation of selling, repairing, servicing, storing or parking automobiles," the court saying at page 594 that this was "plain and unambiguous." Accordingly, we held that the exclusion applied to an automobile in the possession of a repair garage at the time it was being road tested after the work had been completed.

In our next case with exactly the same policy language, *Northwestern Cas. Co. v. Safeco Ins. Co.*, 121 Ga. App. 209 (173 SE2d 407), the facts involved a car owner who took his automobile to a Chrysler-Plymouth agency for repairs and was then driven to his place of work by an employee of the auto agency. The collision occurred while the automobile was being returned to the auto dealer to commence the repairs. This court pointed out that the gist of the exclusion was "Use by another while employed or otherwise engaged in the automobile business." Page 211. Thus it was applicable even though the auto dealer's employee was not actually working on the car at the time it was in his possession for the sole purpose of transportation to the automobile agency and came within the exclusion.

In that case this court undertook at page 210 to restate the plain meaning of the policy's provisions to be: "This policy does not apply under the liability section to an owned automobile while used by any person while such person is employed or otherwise engaged in the business or occupation of selling, repairing, servicing, storing, or parking automobiles."

This restatement by our court in explanation of the same language in the policy now under consideration clearly applies to a service station operator returning an automobile to its owner after completing repairs. In fact, in a similar situation which was presented in Universal Underwriters Ins. Co. v. Northwestern Ins. Co., 306 FSupp. 437 (Ill. 1969) the court pointed out that the return of the automobile to the owner's residence as requested by the owner was an integral part of the business "by providing a service of convenience to engender good will."

The party seeking recovery of the insurer in the case at bar is

the service station operator and not the insured. The service station operator's possession of the car was for servicing and he continued in the service station business while returning the car as an accommodation.

Our ruling here is in accord with the general principle stated in 7 Appleman Insurance Law & Practice, § 4372, where the author says: "Under the standard automobile policy, a limitation is applied to the coverage of the omnibus policy so as not to extend coverage over to a service station, public garage, sales agency, repair shop, or public parking place, even though such establishment has rightful custody of the vehicle during its operation, maintenance, or use by an employee thereof. This does not mean that the named insured is not protected if liability should be imposed upon him while the vehicle is being so used; but it prevents the insurer from becoming liable by reason of judgments recovered against such an establishment." In conformance with this quotation from Appleman, we wish to make clear that nothing in this opinion shall be construed to deprive the insured automobile owner from coverage if he be held liable for the acts of the driver. See also 7 AmJur2d 285, Automobile Insurance, § 125 and 13 Couch on Insurance §§ 45:982 and § 45:986.

2. Under our ruling it is not necessary to consider the question of agency but it would appear from *Pressley v. Wilson,* 116 Ga. App. 206 (1) (156 SE2d 399) that delivery to a mechanic for the purpose of repairs creates a bailment relationship with the mechanic being an independent contractor. In addition to cases cited therein on this point see *Graham v. Cleveland,* 58 Ga. App. 810 (200 SE 184); *Speed Oil Co. of Calhoun v. Jones,* 59 Ga. App. 625, 626 (1 SE2d 760); *Fisher v. Clark,* 60 Ga. App. 744 (5 SE2d 249); and *Simmons v. Beatty,* 61 Ga. App. 759 (7 SE2d 613).

*Judgment reversed. Bell, C. J., Hall P. J., Eberhardt, P. J., Pannell, Deen, Quillian and Stolz, JJ., concur. Evans, J., dissents.*

Evans, Judge, dissenting. The majority opinion holds the insurance coverage was not effective in this case, because the car, which became involved in a traffic mishap as it was being returned to the owner, was within the exclusion clause of the policy. The exclusion clause provided that no insurance coverage would be afforded if at the time of the injury the insured automobile was being "maintained or used by any person while such person is employed or otherwise *engaged in the automobile business."* (Emphasis supplied). It was stipulated between the parties in this case that at the time of the traffic incident the repairs to the car

had been completed, and the auto repairman was having the car returned to the owner *as a matter of accommodation.* (Emphasis supplied.)

The majority opinion cites and relies on three Georgia cases and one foreign case, in each of which the facts are quite different and readily distinguishable from the facts in the case sub judice.

In *Public Indemnity Co. v. Yearwood,* 50 Ga. App. 646 (179 SE 232), there was no question as to whether the automobile was being used in the business of the automobile repairman, it being stipulated by the parties that it was being so used, at the time the car ran over and killed plaintiff's son. Of course, the exclusion clause in the policy thus prevented coverage.

In *Allstate Ins. Co. v. McBride,* 117 Ga. App. 592 (161 SE2d 415), the automobile at the time of the injury was being road-tested by an independent contractor after the installation of a timing chain. Clearly such use was "while engaged in the automobile business," and the exclusion clause in the policy prevented coverage.

In *Northwestern Nat. Cas. Co. v. Safeco Ins. Co.,* 121 Ga. App. 209 (173 SE2d 407), the automobile was used first to transport the owner from the automobile place of business to the owner's place of work; the owner then relinquished the car to the driver (an employee of the auto repairman) for the purpose of his returning it to the place of business of the auto repairman, to be repaired, and the collision occurred while traveling towards such auto repair place. The act of carrying the car by an employee to the auto repairman was held to be a part of the auto repairman's business; and the exclusion clause in the policy prevented coverage in this case.

The majority opinion also cites a foreign case, to wit Universal Underwriters Ins. Co. v. Northwestern Ins. Co. of Milwaukee, 306 FSupp. 437, in which case a car was being returned to the owner, and it was held that during such return the employee who drove the car was engaged in the automobile business. But the facts in the Universal case are quite different and are readily distinguishable from the facts in the case sub judice. In Universal, supra, the owner returned to the automobile place of business in a car such repairman had loaned him, about noon on September 8, 1965, to pick up his car after repairs had been completed, but he was told that the repairs would not be completed until some time during the afternoon. In view of the owner's having made one trip to the repairman's place of business for the purpose of picking up his car — and finding the repairs not completed — the auto

repairman became obligated to deliver the car to the owner, and while enroute the car was involved in a traffic mishap. This completely differentiates this case from the case sub judice.

But in the case sub judice the facts are quite different from those in each of the four cited cases on which the majority relies, for here it was stipulated between the owner and the repairman, after the repairs were completed, that the repairman *"as accommodation to his customer"* would return the car to the place where the owner worked. Of course, the owner could have gone to the repairman's place of business and picked up his car after repairs were completed, but the repairman "as accommodation to his customer" (and *not* as a part of the contract — *not* as a part of the consideration of making the repairs and being paid therefor) agreed to return the car *strictly as a matter of accommodation.* This was not a part of repairing the car — such as driving the car to the auto repairman's place of business would have been — but was an act of accommodation to the owner after the repairs were completed, and after the repairman had earned the money due for repairs. If he had failed to return the car as promised, no recourse would have been available to the car owner except to tell the repairman that he had failed to "accommodate" the owner, as he had said he would do.

Thus, the car was not being "maintained or used by any person while such person is employed or otherwise engaged in the automobile business..." Any person who could drive the automobile, even though not an auto repairman, could have performed this service as an accommodation to the owner. The person driving the automobile towards the owner's place of work at time of the injury was not at that time "employed or otherwise engaged in the automobile business," but to the contrary, was performing an act of accommodation to the owner, after completion of the repairs to the automobile. The repairman was to be paid for repairing the car, but not for returning it to the owner.

It would have been easy for the insurer, when writing the policy, to define the meaning of the term, "engaged in the automobile business," and if it wished this language extended to include *the return of the car to the owner,* then it could have added language substantially as follows, to wit: "As used in this policy, the language *'engaged in the automobile business'* shall be held to include the return of the automobile to the owner after repairs have been completed." Then we would be relieved of the tedium

of inquiring as to what "engaged in the automobile business" means, and how far it extends, and whether it includes the return of the car to the owner after repairs are completed. But the insurer elected to leave this language vague and ambiguous, when it could have removed all doubt so easily.

When an insurance policy is couched in terms that are vague or ambiguous, such ambiguity must be construed most strongly against the insurance company, whose experts wrote the policy, and most strongly in favor of the insured, who simply bought the policy and had no part in writing it. See *Colonial Life & Acc. Ins. Co. v. Croom,* 96 Ga. App. 264, 265 (99 SE2d 554). In *Raynor v. American Heritage Ins. Co.,* 123 Ga. App. 247, 249 (180 SE2d 248), this court held: "The general rule . . . is that policies of insurance are to be liberally construed in favor of the object to be accomplished and in favor of the insured except when the language is so unmistakably clear and unambiguous as to allow but one meaning."

We have previously pointed out that the three Georgia cases relied on, and the foreign case cited and relied on, in the majority opinion, are not applicable and are clearly distinguishable on their facts from the case sub judice. Further, as to the foreign case, of course, this court is not bound by decisions from other states or from federal courts, except decisions by the U. S. Supreme Court. *Thornton v. Lane,* 11 Ga. 459; *Thompson v. Eastern Air Lines,* 200 Ga. 216, 222 (39 SE2d 225). The cited case is not one in the United States Supreme Court and is in no wise binding on this court.

I therefore dissent from the majority opinion and would affirm the judgment of the lower court in holding that the insurance coverage was effective in this case.