71831. PHOENIX INSURANCE COMPANY et al. v. MORTERS.
(345 SE2d 128)

McMURRAY, Presiding Judge.

Michael Cameron Morters, d/b/a Cameron Cars ("Morters"), sold a Mercedes automobile to Edward C. Mosca. The automobile was in damaged condition and it needed significant repairs and painting. Morters and Mosca agreed that Morters would keep the automobile in his possession for the purpose of making the necessary repairs. (Morters was in the business of restoring and repairing automobiles. Occasionally, Morters also bought and sold automobiles.) The sales price of the automobile included all costs of repairing and restoring it. Morters was to deliver the automobile to Mosca after completing the necessary repairs.

On December 1, 1982, Morters was driving the Mercedes to Griffith Brothers Tire Company ("Griffith Brothers") so that Griffith Brothers could align the wheels. (Morters did not have the facilities to do a wheel alignment.) This was to have been the last repair and Morters was going to deliver the automobile to Mosca's wife after the wheel alignment was completed. Morters drove the automobile pursuant to permission given to him by Mosca. Morters never made it to Griffith Brothers because the Mercedes was wrecked when it collided with a vehicle driven by Gennell O'Kelley. The collision resulted in a lawsuit brought by Gennell O'Kelley and her husband against Morters and Mosca.

Mosca's Mercedes was insured by The Phoenix Insurance Com-

pany ("Phoenix"). The Phoenix insurance policy excludes from coverage "any vehicle while being used or maintained in an *auto business*." *"Auto business"* is defined by the policy as "the occupation or business of selling, repairing, servicing, storing, parking or transporting vehicles." Relying upon the policy exclusion, Phoenix declined to extend coverage. Thereupon, Morters and his insurer, Auto-Owners Insurance Company, brought this declaratory judgment action against Phoenix, Mosca and the O'Kelleys to declare the legal rights and obligations of the parties under the Phoenix policy. Following discovery, Morters and his insurer moved for summary judgment. The motion was granted by the trial court and Phoenix appeals. *Held*:

In *Haley v. State Farm &c. Ins. Co.*, 130 Ga. App. 258 (202 SE2d 838), a service station operator borrowed his brother's pick-up truck to provide road service to a customer. As he was returning the truck to his service station, a collision occurred. The insurance policies which had been issued to the service station operator and his brother provided that liability coverage did not extend to an automobile "(1) While maintained or used by any person while such person is employed or otherwise engaged in an automobile business of the insured or any other person or organization . . ." "Automobile business" was defined by the policies as "the business or occupation of selling, leasing, repairing, servicing, storing or parking of vehicles or trailers." Holding that the collision occurred while the service station operator was engaged in the automobile business and that, therefore, the exclusion set forth in the policies applied, the court affirmed the grant of summary judgment to the insurer. In so doing, the court pointed out that there are two primary types of "automobile business" exclusions, an "older" type (see, e.g., *Allstate Ins. Co. v. McBride*, 117 Ga. App. 592 (161 SE2d 415)) and a "newer" type (see, e.g., *Northwestern Nat. Cas. Co. v. Safeco Ins. Co.*, 121 Ga. App. 209 (173 SE2d 407) and *United States Fidelity &c. Co. v. Boyette*, 129 Ga. App. 843 (201 SE2d 660)). The "older" type of exclusion "focuses on the use to which the automobile is being put at collision-time and is phrased in terms of excluding coverage for automobiles being 'used' in the automobile business." *Haley v. State Farm &c. Ins. Co.*, 130 Ga. App. 258, supra at 260. The "newer" type of exclusion (with which the court was concerned in *Haley*) "focuses on the person in whose charge the automobile is at collision-time." Id. at 260. Of course, the "older" type of exclusion is more narrow than the "newer" type and it affords greater insurance coverage. Id. at 260.

The policy in the case sub judice is of the "older" variety. It focuses upon the "use" of the automobile at the time of the collision. Did Morters "use" Mosca's Mercedes automobile in his "auto business?" Relying upon *Allstate Ins. Co. v. McBride*, 117 Ga. App. 592, supra, Phoenix contends Mosca's automobile was so used and that,

therefore, the exclusion is applicable.

In *McBride*, an automobile mechanic was involved in a collision while road testing an automobile owned by Allstate's insured. The mechanic was driving the car to see how it performed following the installation of a timing chain. Relying upon the exclusion set forth in the policy issued to its insured, Allstate denied coverage. The exclusion provided that coverage did not apply to "An owned automobile while used in an automobile business . . ." The trial court determined that coverage was not available because the insured's vehicle was "used" in the mechanic's automobile business. This court agreed, ruling: "[I]t can not be denied that the vehicle of [the insured] was being serviced at the time of the collision. Checking the results of the car's operation after the installation of a timing chain is certainly an integral part of the servicing done. If the installation was not satisfactory to [the mechanic] he would have had to correct it. His contract would not have been completed until he satisfied himself that his work was satisfactory." Id. at 594. In reaching its decision, the *McBride* court distinguished *Pirkle v. American Liberty Ins. Co.*, 247 FSupp. 1018 (N.D. Ga. 1965).

In *Pirkle*, it was held that a "use" type of exclusion did not apply where an automobile dealer's salesman drove the insured's vehicle off of the premises to have it appraised. In the words of the *Pirkle* court: "This Court is of the opinion that this language is not intended to exclude coverage because the automobile happens to be in possession of one or under control of a person whose business is automobiles. Nor can it reasonably be interpreted to deny coverage by the mere fact that a salesman is using a prospective customer's car in the process of appraising it. On the contrary a reasonable person in the position of the insured would understand it to mean that the coverage would be excluded when the automobile was employed for some purpose in connection with the automobile business." Id. at 1023.

*Pirkle* was cited with approval by this court in *Haley v. State Farm &c. Ins. Co.*, 130 Ga. App. 258, supra. Morters and his insurer contend that since the *Haley* court approved the ruling in *Pirkle*, *McBride* was overruled by implication. We disagree. The *Haley* court cited *McBride* as well as *Pirkle*. In citing *McBride*, the *Haley* court made no suggestions that *McBride* should not be followed. Moreover, we see no inherent conflict between *Pirkle* (approved in *Haley*) and *McBride*. In *McBride*, the automobile was "used" in the automobile business at the time of the collision since the road test was an "integral part" of the repair work performed by the mechanic. See 7 AmJur2d, Auto. Ins., § 99. In *Pirkle*, on the other hand, the automobile was not used in the automobile business at the time of the collision since the driving off of the automobile for an appraisal was merely ancillary to the automobile business.

We think the facts of the case sub judice are more in line with *Pirkle* than with *McBride*. At the time of the collision, Morters was merely driving the automobile to another location for repairs. The driving of the automobile for that purpose was ancillary to Morters' automobile business. Unlike a road test, the driving of the automobile by Morters was not an "integral part" of Morters' repair work. Thus, the automobile was not being "used" in Morters' automobile business at the time of the collision. Nor can it be said that the automobile was being "maintained" in Morters' automobile business at collision-time.

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED MAY 7, 1986.

*George W. Brinson, J. Douglas Stewart*, for appellants.
*Douglas E. Smith, E. Wycliffe Orr*, for appellee.