# WALTER WENDT v. HELEN WALLACE AND OTHERS.[1]

January 15, 1932.

No. 28,646.

*Baldwin, Baldwin, Holmes & Mayall,* for appellant.
*Roderick Dunn,* for respondent.

WILSON, C. J.

The appeal is from a judgment.

John A. Gamble operated a public garage. Among other things in his business he stored cars for customers under an arrangement wherein he agreed to and did deliver them to the owner as needed. One Oman was one of his employes. Under such arrangement Helen Wallace kept her automobile in Gamble's garage. In response to her phone call to the garage for her car, Oman undertook to deliver it to her. While he was on the street with the car to make the delivery it collided with another automobile in which plaintiff was riding, and plaintiff was seriously injured. He sued Helen

[1]Reported in 240 N. W. 470.

Wallace, John A. Gamble, and Oman. He did not recover against Helen Wallace, but he obtained a verdict for $20,000 against both Gamble and Oman. The verdict of the jury established that Oman at the time of the accident was in Gamble's service, not in the service of Helen Wallace.

Helen Wallace carried liability insurance with the Travelers Insurance Company. Its purpose primarily was to indemnify her against loss from damage claims. It also extended an additional coverage to other persons using the car with her permission. But there was written into the policy a limitation as to this additional coverage thus:

"This agreement shall exclude any obligation of the Company * * * to any person or organization, other than the name Assured, operating an automobile repair shop, public garage, sales agency or service station, and arising out of the operation thereof."

After the verdict was rendered plaintiff garnisheed the Travelers Insurance Company and the Travelers Indemnity Company, and, upon their disclosure of nothing owing, filed a supplemental complaint against them in which it was alleged that under the terms of the policy Oman was an assured by virtue of the coverage for other persons driving the car with the consent of the owner. Issue was joined, and the court made findings in favor of plaintiff and against the Travelers Insurance Company, holding that Oman was an assured under the policy, and judgment was entered thereon.

The language in the policy is plain. The intent is clear. Coverage was extended to those driving with permission of the assured. It is equally plain and clear that the company saw fit to limit the extended coverage so as to eliminate the class of risks arising from the handling and operation of the car by persons identified and connected with repair shops, public garages, sales agencies, and service stations. Gamble's garage was a "public garage." Such limitation is based upon reason. The owner does not grant permission to these individuals. Individually they are usually unknown to him. They are in quite a distinct group from persons to whom an ordinary assured usually gives permission to drive his

car. The chance of accidents while the car is in the hands of the excluded class is probably greater. Indeed, it is highly probable that those in the excluded class are covered by policies held by their employers who pay a premium commensurate with the risk involved. To include the excluded class in the ordinary policy would tend only to increase the premium therefor and put a burden upon the insurer which does not in reason or principle belong to him. We see no special benefit to the assured to have the policy cover the excluded risk. Obviously the intention was to exclude the obligation, otherwise assumed, both to the one using or handling the car and to the one legally responsible for its use.

The trial court construed the word "operating" in the exclusion clause as having reference to management only. We do not agree. Of course the word "operate" has various meanings, but we consider its meaning here only as used in the policy. Upon such construction of the word "operating" the trial court concluded that Gamble was excluded but his employe Oman was not.

True, Gamble operated the garage. How? With help. In the meaning of the policy the help was also engaged in the "operation" of the garage. Oman was an arm of his employer. At the time of the accident he was doing one of the very things that constituted the "operation" of the garage. The delivery of the car was a contractual duty which Gamble owed to his customer. The employe at the time of the collision was doing the work of his employer. No one could reasonably suggest that it was ever the intention to exclude merely the owner of such garage business and include the class of men constituting the employes who actually do the work of their employer but whose conduct by virtue of number and education may create a more hazardous risk. Certainly the work done by Oman was work "arising out of the operation thereof" (garage). We think the delivery of the car, under the circumstances, was included in the "operation" of a public garage.

It is the law that if the intent of the language of the instrument is plain and apparent, effect should be given to that intent if the language used is reasonably calculated to express it. Here it so

appears, unless the word "operated" is necessarily restricted and limited. We think the word ordinarily means the same as to run a business; to carry on in the business to which the word is applied; to continue in operation or activity; to carry out or through; to work; to act; to conduct a business.

The "operation" of a public garage as here involved and as this term was used in this policy includes all the various activities which together constitute the carrying on of the business; and all the employes, as well as the manager, whether on the sales floor, soliciting prospects on the street, in the accounting department, in the repair shop, or delivering storage cars to the customer-owner, are all engaged in the "operation" of the garage; and the work of any such employe arises out of the "operation" of such garage.

Men who are engaged to do certain things in a particular business are usually thought of as engaged in operating that business. We have said that men who are to keep railroad tracks in repair for trains to run over and switchmen engaged in making up trains are engaged in "operating" the railroad. Steffenson v. C. M. & St. P. Ry. Co. 45 Minn. 355, 47 N. W. 1068, 11 L. R. A. 271; see also Lavallee v. St. P. M. & M. Ry. Co. 40 Minn. 249, 41 N. W. 974; Jemming v. G. N. Ry. Co. 96 Minn. 302, 104 N. W. 1079, 1 L.R.A. (N.S.) 696; Sartain v. Jefferson City T. Co. 183 Mo. App. 237, 170 S. W. 411.

As between the insurer and the assured, a policy is to be construed most strictly against the insurer. This rule however refers to ambiguities. The contract being clear, it is the duty of the court to make it effective. This duty cannot be brushed aside by the fact that an insurance company is a party to the action.

We construe the language as meaning that the intention was to exclude all persons engaged in the operation of the garage. That intent is defeated unless we construe the language as applying to the employes in such garage who handle the car as a part of the service sold, as was being done in this case. 32 C. J. 1158; Witherstine v. Employers L. A. Corp. 235 N. Y. 168, 139 N. E. 229, 28 A. L. R. 1298.

Reversed.

HILTON, J. (dissenting).

I dissent.

I feel that the majority opinion does not properly apply the established rule relative to construing the provisions of a policy. It should be construed strictly as against the insurer and liberally as to the insured, and any ambiguity as to meaning must be resolved in favor of the insured. Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790. "The policy is to be construed in favor of the assured to effect the insurance, and exceptions to the general liability provided are to be strictly construed against the insurer." Pawlicki v. Hollenbeck, 250 Mich. 38, 43, 229 N. W. 626, 627. The strict rule applies in determining whether Oman was an insured. Once established that he was, then plaintiff has the right to prevail here. Oman himself has rights; there is a judgment against him; if an assured, he is entitled to have it reduced to the extent of $7,500.

The appeal being from a judgment and there being no record here of the evidence taken at the trial, the findings of fact are to be taken as sustained by the evidence and correct. The conclusion reached by the trial court that Oman was not operating a garage or service station binds us. Thoreson v. Quinn, 126 Minn. 48, 147 N. W. 716. If not so operating, he was covered by the policy. The one here clearly within the exclusion was Gamble; he was the sole operator, and the accident arose out of that operation. As was well stated by the trial court:

"Had it been intended to exclude an employe of the person or organization operating the garage, the language used could simply and without ambiguity have excluded liability 'arising out of the operation of the garage, etc.' alone, or in the alternative with the first provision of subdivision C instead of in the conjunctive."

Here both conditions must maintain in order to work an exclusion—to be excluded a person must be the operator *and* the accident must be one arising out of the operation. Gamble was excluded; Oman was not. I cannot agree that every employe of Gamble in or about his garage, no matter how slight or insignificant might be the services rendered, was within the category of "any

194

person  *  *  *  operating a public garage." Oman was not running or conducting the business.

Appellant, undoubtedly with able legal advice, chose the language used in the exclusion clause intending not to limit the coverage and thereby offer an attractive policy. If an agent or employe of the operator was to be excluded from coverage, proper words to accomplish that purpose should have been used; they were not; their omission is more than significant. It may be suggested that words frequently used, such as "owners, agents, or employes thereof"; "proprietor, owner, agent, or employe of any garage"; "any person or organization or employe thereof," would have made the situation plain.

DIBELL, J. (dissenting).
I concur with Mr. Justice Hilton.