1999-NMCA-153

992 P.2d 891

Thomas GRISHAM, as Personal Representative of the Estate of Lealon Spaulding, deceased, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Plaintiff–Appellee,

v.

Employers Insurance of Wausau, a Wisconsin Corporation, Defendant–Appellant,

and

Northbrook National Insurance Company, an Illinois Corporation, Defendant–Appellee,

and

Richard Shamas and Sandy Shamas, Defendants.

No. 20114.

Court of Appeals of New Mexico.

Sept. 30, 1999.

Certiorari Denied, No. 26,011, Nov. 17, 1999.

Edward Ricco, Jocelyn Drennan, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Appellant Wausau.

Gordon J. McCulloch, Kathleen M. Mixon, Bradley & McCulloch, P.A., Albuquerque, for Appellee Allstate.

Kim E. Kaufman, Leroi Farlow, The Farlow Law Firm, Albuquerque, for Appellees Northbrook National Ins. Co. & Southwest Products.

*OPINION*

BOSSON, Judge.

{1} This is an appeal from a declaratory judgment arising from a dispute among insurance companies over which company's liability policy provided primary coverage in regard to a personal injury claim from an automobile accident. The specific issue on appeal concerns the meaning and interpretation of an automobile business exclusion in one company's policy, and whether it is a complete defense to coverage. On cross-motions for summary judgment the district court held that the automobile business exclusion did not apply to the facts of this claim, but we do not agree. We reverse and grant summary judgment based on that exclusion.

■ {2} All parties to this appeal agree that the interpretation of this automobile business exclusion is governed by Colorado law. *See Shope v. State Farm Ins. Co.,* 1996–NMSC–052, ¶ 9, 122 N.M. 398, 925 P.2d 515 (New Mexico interprets insurance contracts according to the law of the jurisdiction where the contract was executed). The parties also agree that the central facts are not in dispute, and they have filed cross-motions for summary judgment requesting this Court to rule on the issue as a matter of law. Where cross-motions for summary judgment are presented on the basis of a common legal issue, this Court may reverse both the grant of one party's motion and the denial of the opposing party's cross-motion and award judgment on the cross-motion. *See Benavidez v. Sierra Blanca Motors,* 120 N.M. 837, 907 P.2d 1018 (Ct.App.1995), *rev'd in part on other grounds,* 1996–NMSC–045, 122 N.M. 209, 210, 922 P.2d 1205, 1206.

**BACKGROUND**

{3} Southwest Products Corporation (Southwest), situated in Phoenix, Arizona, is in the business of manufacturing bodies that go on trucks. Specifically, Southwest manufacturers self-contained lube systems and installs them on its customers' trucks. Southwest takes a customer's truck with cab and chassis, builds a platform, mounts tanks on the platform, and puts pumps in the tanks that pump oil products out of a reel. When attached to the truck, this product allows the customer to use its truck to service equipment in the field.

{4} In this case, Sturgeon Electric Company (Sturgeon), a Colorado company, ordered such a self-contained, custom-designed lube system from Southwest, which Southwest was to install on one of Sturgeon's trucks. Southwest hired a driver, Spaulding, to drive Sturgeon's truck from Denver to Phoenix, so that Southwest could install the

lube system. An accident occurred en route to Phoenix, causing injuries to a third party who made liability claims against the truck driver, as well as against Sturgeon and Southwest. In due course Spaulding, Sturgeon, and Southwest submitted coverage claims to their respective insurance companies, and a dispute arose among the carriers as to which company had primary coverage.

{5} Northbrook National Insurance Company (Northbrook) and Allstate Insurance Company (Allstate) insured Southwest and the truck driver, respectively. Employers Insurance of Wausau (Wausau) insured Sturgeon. Northbrook and Allstate identify Wausau as the primary carrier. Wausau denies any coverage based on an automobile business exclusion in its policy with Sturgeon. We examine the automobile business exclusion in some detail so as to decide whether it properly applies to the undisputed facts of this case.

## THE AUTOMOBILE BUSINESS EXCLUSION AND THE TERM "SERVICING"

{6} The Wausau policy excludes a Sturgeon vehicle or its driver from coverage in certain circumstances when the vehicle is being driven by someone else; that is, "[s]omeone using a covered 'auto' while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is[, Sturgeon's]." According to Wausau, the district court should have held as a matter of law that Southwest was using a "covered auto" owned by Sturgeon while Southwest was working in the business of "servicing" autos, an activity expressly excluded under the policy. Accordingly, the district court should have held the exclusion applicable as a matter of law. We agree.

{7} The automobile business exclusion is a common provision in liability insurance policies. See Wendt v. Wallace, 185 Minn. 189, 240 N.W. 470, 471 (1932); Tindall Pontiac, Inc. v. Liberty Mut. Ins. Co., 441 S.W.2d 948, 949 (Tex.Civ.App.1969); see also Eliot J. Katz, Annotation, Who Is "Employed or Engaged in the Automobile Business" Within Exclusionary Clause of Liability Policy, 55 A.L.R.4th 261, 268 (1987). Its genesis lies in the assumption that when an insured automobile is turned over to an independent automobile business for servicing, repairing, parking, and so forth, it is likely to be driven by an agent of that business over whom the insured has no control. See Wendt, 240 N.W. at 471; Tindall, 441 S.W.2d at 949; 55 A.L.R.4th at 268; 7 Am.Jur.2d Automobile Insurance § 262 (1997). Lack of control increases risk to the owner's insurer, a risk that is neither included in the policy nor calculated in the premium charged to the owner. See Wendt, 240 N.W. at 471; see also Haley v. State Farm Mut. Auto. Ins. Co., 130 Ga.App. 258, 202 S.E.2d 838, 840 (1973); 55 A.L.R.4th at 268; 7 Am.Jur.2d, supra, § 262. Accordingly, once the independent automobile business assumes control over the vehicle, it is reasonable that the business, and not the owner, bear the cost of insuring for such risks under its own liability policy. See Wendt, 240 N.W. at 471; 55 A.L.R.4th at 268.

{8} For purposes of this particular policy, the operative term is "servicing," which is not defined in the policy. Undefined words in an insurance policy are given their plain and ordinary meaning if that can reasonably be ascertained. See Lopez v. Dairyland Ins. Co., 890 P.2d 192, 195 (Colo.Ct.App. 1994); State Farm Mut. Auto. Ins. Co. v. Bencomo, 873 P.2d 47, 49 (Colo.Ct.App.1994); Gulf Ins. Co. v. State, 43 Colo.App. 360, 607 P.2d 1016, 1018 (1979). Our question, therefore, is whether the term "servicing" in Wausau's policy is capable of a plain and ordinary meaning. We believe it is.

{9} The common definition of "servicing" includes to make "fit for service"; "inspecting, adjusting, repairing, refueling, etc." Webster's New World Dictionary 1331–32 (college ed.1968). It is defined similarly in The Random House Dictionary of the English Language 1304 (unabridged ed.1969) as "to make fit for use; to repair; restore to condition for service: to service an automobile." It has also been defined as "[t]o perform services of maintenance, supply, repair, installation, distribution, etc. for or upon; as, to service a car ...." Webster's New International Dictionary 2288 (unabridged 2d ed.1955). We focus on the phrase "fit for service" and the word "install."

{10} Under similar language in an automobile business exclusion, it has been held that "servicing" reasonably can be construed to include cleaning, waxing, vacuuming, and filling an automobile with gasoline, and therefore the exclusion applied once the owner turned the vehicle over to another business for any of those purposes. *See Metropolitan Property & Liab. Ins. Co. v. Mr. Pride of Atlanta, Inc.,* 258 Ga. 770, 374 S.E.2d 82, 82–83 (1988). Similarly, the term "servicing" in an exclusionary clause has been held to include washing the exterior of a vehicle, "just as if [the vehicle] were being rustproofed, oiled or painted." *Sutton v. Spencer,* 56 Ohio App.3d 147, 565 N.E.2d 854, 856 (1989). The Florida court in *Sanz v. Reserve Insurance Co.,* 172 So.2d 912, 913 (Fla.Dist.Ct.App.1965), refused to limit the word "servicing" to a vehicle being mechanically disabled. Although interpreting a different kind of clause, the *Sanz* court noted that a narrow construction of "servicing" would defeat the plain and ordinary meaning of the word and held that the ordinary meaning of servicing a vehicle included contracting to have a business name painted on it. *See id.* Within the meaning of a substitute automobile provision, the federal court in *Houston General Insurance Co. v. American Fence Co.,* 115 F.3d 805, 808 n. 3 (10th Cir.1997), construing Oklahoma law, noted that the installation of a cellular telephone in an automobile would likely be "servicing." "Installing" probably comes the closest to the fact scenario in the present case.

{11} We see no reasonable basis for concluding that Southwest was not "servicing" Sturgeon's truck within the meaning and purpose of the exclusion in Wausau's policy. Southwest makes vehicles "fit for service." Southwest designs and "installs" its lube systems on the chassis of its customers' vehicles. In this case Southwest was to make Sturgeon's truck "fit for service" by "installing" the custom-designed lube system on the chassis of Sturgeon's truck. Southwest was in the business of providing this service to its customers and their trucks. There can be no doubt that the insured owner, Sturgeon, relinquished complete control over its truck once releasing it to Southwest's driver for transport to Phoenix.

{12} Northbrook indicates on appeal that the use of the word "servicing" is ambiguous, and therefore, according to the general rule of construction, should be construed narrowly against the insurer. *See State Farm Mut. Auto. Ins. Co.,* 873 P.2d at 49. We have no quarrel with the general rule, only with the claim of ambiguity. *See Sutton,* 565 N.E.2d at 856 (stating that the terms "servicing" or "serviced" are not ambiguous and clearly include exterior maintenance of an automobile); *see also Mr. Pride of Atlanta, Inc. v. Metropolitan Property & Liab. Ins. Co.,* 187 Ga. App. 737, 371 S.E.2d 211, 213 (Beasley, J., dissenting) ("Upon analysis, the term ["servicing" in an automobile business exclusion] is not ambiguous."), *rev'd,* 258 Ga. 770, 374 S.E.2d 82 (1988) (Georgia Supreme Court reversing based upon Beasley dissent).

{13} Northbrook does not explain how the exclusion is supposedly ambiguous other than to indicate that "servicing" is susceptible of more than one meaning as witnessed by the fact of this lawsuit. But the mere fact of a litigated dispute does not give rise to ambiguity as a matter of law. In this instance, Northbrook does not persuade us that the word "servicing" is ambiguous. We observe that the district court did *not* base its ruling on a finding of ambiguity in the policy, and in passing, we note it is not clear whether Northbrook even preserved such a claim. Based on the aforementioned case law, we hold that the applicability of Wausau's exclusionary provision in this case is clear and unambiguous and capable of resolution within the plain meaning of the language employed, especially when placed in context. *Cf. Fire Ins. Exch. v. Rael,* 895 P.2d 1139, 1143 (Colo.Ct.App.1995) (finding an ambiguous exclusion where a handwritten addition made the exclusion reasonably susceptible to more than one meaning). The general rule of construction giving a narrow interpretation to exclusionary language cannot be utilized to override the clear and unambiguous terms of an exclusion. *See J & S Enters., Inc. v. Continental Cas. Co.,* 825 P.2d 1020, 1023 (Colo.Ct.App.1991); *Wendt,* 240 N.W. at 472.

{14} Northbrook also argues that "servicing" should be applied narrowly only to service stations or garages providing mechanical work to vehicles. However, such a construction would defeat the plain and ordinary meaning of the word as it has been judicially determined by other courts. *See Sanz,* 172 So.2d at 913. It would also contradict the parties implied intent, as evidenced by the specific exclusion of both "servicing" and "repairing" within the policy, to exclude coverage in situations going beyond repairing vehicles. Additionally, Northbrook fails to cite any authority in favor of a narrower interpretation of the word "servicing" when the business, although not a "garage" or "service station," nonetheless engages in an activity delineated in the exclusion. We are not persuaded to limit "servicing" as Northbrook suggests.

## SPAULDING WAS WORKING IN SOUTHWEST'S BUSINESS OF SERVICING AUTOMOBILES

▉ {15} Allstate argues that Spaulding, the driver hired by Southwest to deliver Sturgeon's truck for servicing, was not working in Southwest's business at the time of the accident because he was not hired to service Sturgeon's truck. Allstate argues alternatively that this Court should affirm the summary judgment for Allstate because Spaulding was merely an independent contractor whose only duty was to *drive* the truck, an activity not listed in the exclusionary clause.

▉ {16} "Working in the business" for the purpose of an automobile business exclusion includes activities that are an integral and necessary part of the automobile business. *See United Fire & Cas. Co. v. New Hampshire Ins. Co.,* 684 F.Supp. 1030, 1032 (W.D.Mo.1988). This includes the delivery of a vehicle for servicing by the automobile business or one of its agents. *See id.; Weston v. Great Cent. Ins. Co.,* 514 S.W.2d 17, 22 (Mo.Ct.App.1974); 55 A.L.R.4th at 275–76. It is immaterial whether the delivery is non-routine or done as an accommodation to the customer. *See Craft v. Trahan,* 351 So.2d 277, 281 (La.Ct. App.1977); *United States Fidelity & Guar. Co. v. Boyette,* 129 Ga.App. 843, 201 S.E.2d 660, 662 (1973). Additionally, the driver

need not be an employee of the automobile business to fall within the exclusion as long as the driver is acting on behalf of the automobile business. *See St. Paul Fire & Marine Ins. Co. v. West Am. Ins. Co.,* 437 A.2d 165, 169–70 (Del.Super.Ct.1981) (exclusion applied to bank collection manager driving repossessed car being offered for sale); *Universal Underwriters Ins. Co. v. American Motorists Ins. Co.,* 541 F.Supp. 755, 758 (N.D.Miss.1982) (mem.) (exclusion applied to driver who delivered dealership customer's cars on an as-needed basis); *Wesco Ins. Co. v. Velasquez,* 88 N.M. 273, 274–75, 540 P.2d 203, 204–05 (1975) (involving the wife of automobile business owner delivering customer's cars). "The decisive question ... is, not whether the [driver] was himself engaged in the automobile business at the time of the accident, but rather whether he was engaged in the automobile business of 'any other person or organization' ...." *Bollin v. Automobile Club Inter–Ins. Exch.,* 525 S.W.2d 389, 391 (Mo.Ct.App.1975).

{17} At the time of the accident, Spaulding was driving Sturgeon's truck to Southwest's place of business so that Southwest could install its lube system. Southwest had previously utilized Spaulding for this purpose as an accommodation to the customer. Southwest, not Sturgeon, selected Spaulding. Sturgeon had no control or direction over the route Spaulding was to take or the manner in which he was to deliver the truck to Southwest. Southwest paid Spaulding a mileage fee plus expenses, including fuel, room, and food. Southwest gave Spaulding cash advancements and had him present receipts for reimbursements and an itemized accounting of expenses to Southwest. Spaulding was delivering Sturgeon's truck as an integral and necessary part of Southwest's business. Therefore, at the time of the accident, Spaulding was "working in Southwest's business," as that phrase has been judicially interpreted.

## CONCLUSION

{18} We reverse the district court's grant of summary judgment to Northbrook and Allstate and the denial of summary judgment to Wausau. We grant Wausau's motion for summary judgment and hold as a

matter of law that the automobile business exclusion in Wausau's policy excludes coverage in this case.

{19}  **IT IS SO ORDERED.**

WECHSLER and BUSTAMANTE, JJ., concur.