**Certiorari Granted, January 27, 2017, No. S-1-SC-36225**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-018**

**Filing Date: November 21, 2016**

**Docket Nos. 34,581 & 34,918 (Consolidated)**

**ENDURO OPERATING LLC,**

      **Plaintiff-Appellant,**

**v.**

**ECHO PRODUCTION, INC.; TALUS, INC.;
TWIN MONTANA, INC.; CIMARRON RIVER
INVESTMENTS, LLC; CMW INTERESTS, INC.;
D2 RESOURCES, LLC; ELGER EXPLORATION,
INC.; PLAINS PRODUCTION, INC.; SOLIS
ENERGY, LLC; THE ALLAR COMPANY;
KEN SELIGMAN; and W. GLEN STREET, JR.,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hinkle Shanor LLP
Andrew J. Cloutier
Parker B. Folse
Roswell, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Albuquerque, NM

Cotton, Bledsoe, Tighe & Dawson, P.C.
Terry W. Rhoads
Jared M. Moore
Midland, TX

1

for Appellees

Michael J. Henry, Attorney at Law, P.C.
Michael J. Henry
Fort Worth, TX

for Appellees Echo Production, Inc.; Talus, Inc.; Twin Montana, Inc.; Cimarron River Investments, LLC; CMW Interests, Inc.; D2 Resources, LLC; Elger Exploration, Inc.; Plains Production, Inc.; Solis Energy, LLC; the Allar Company; and W. Glenn Street, Jr.

McCormick, Caraway, Tabor & Byers, LLP
Cas F. Tabor
Carlsbad, NM

for Appellee Ken Seligman

**OPINION**

**KENNEDY, Judge.**

**{1}** Today, we clarify our opinion in *Johnson v. Yates Petroleum Corp.*, 1999-NMCA-066, 127 N.M. 355, 981 P.2d 288, as to the import of our observation in that case that "any activities in preparation for, or incidental to, drilling a well are sufficient" to satisfy a contract term requiring that drilling of a well be "commenced." *Id.* ¶ 11. That observation is *obiter dicta* and so broad a standard as to have invited misinterpretation. In *Johnson*, subsequent discussion of the issue enunciated many specific activities of physical, operational significance that, in combination, qualified as commencing drilling operations. These activities were further qualified by numerous citations to case law, as we discuss herein. By these standards, we evaluate whether activities undertaken by a party in this case satisfy a "commencement clause" in a joint operating agreement (JOA) based on a standard form used by the American Association of Petroleum Landmen.[1] We determine that actions undertaken by that party, Echo Production, Inc. (Echo), were insufficient in this case to constitute "commencement." Our opinion reverses the summary judgment in Echo's favor, which Plaintiff Enduro Operating LLC (Enduro) appeals.

**{2}** Enduro filed suit against Echo, asserting that Echo did not commence operations per the JOA, to which both are parties, Echo was therefore required to resubmit a proposal, yet failed to do so. The parties filed cross-motions for summary judgment regarding whether Echo satisfied the "commencement" requirement in the JOA. The district court granted Echo's motion for summary judgment and denied Enduro's motions for summary judgment. The district court also granted Echo's motion to exclude the testimony of Enduro's expert

---

[1]Specifically for this case, A.A.P.L. Form 610-1982.

2

witness. Enduro appeals, asserting the district court erred in granting Echo's motions. We agree with Enduro that Echo did not commence operations within the required time period as required by the JOA. Because we reverse the district court's denial of summary judgment to Enduro, we need not reach the issue of whether the district court properly excluded the testimony of Enduro's expert witness. We therefore reverse the district court's order and remand for proceedings consistent with this opinion.

## I.    BACKGROUND

{3}    On April 25, 2006, Echo entered into the JOA for development of an oil and gas property with a number of parties including ConocoPhillips (Conoco) as non-operator. This case is concerned with actions taken under the JOA to develop a new well (Well 6H) in Eddy County. Article VI of the JOA required that a party to the JOA who desired to drill a well—in this case Echo—provide written notice of its proposed operation to the other JOA parties. The notified parties had thirty days from the notice to elect to participate or decline participation in the proposed operation.[2] Parties who declined to participate were then deemed "non-consent" parties.[3] After delivering a written proposal, and allowing thirty days for parties to decide on their actions, Article VI.B.2 required that the proposing party "actually commence the proposed operation and complete it with due diligence" within ninety days after the expiration of the thirty-day notice period.[4] In this opinion, the total amount of time from notice to commencement of drilling is referred to as "the 120-day period."

---

[2]The precise language of the JOA provides, "Should any party hereto desire to drill any well . . . or to rework, deepen or plug back a dry hole drilled at the joint expense of all parties or a well jointly owned by all the parties and not then producing in paying quantities, the party desiring to drill, rework, deepen or plug back such a well shall give the other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation. The parties receiving such a notice shall have thirty (30) days after receipt of the notice within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation. . . . Failure of a party receiving such notice to reply within the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation."

[3]Non-consent parties relinquished their interest in the Well 6H and the consenting parties were entitled to receive the non-consenting party's share of proceeds.

[4]The exact language of the JOA states the following: "If any party receiving such notice as provided in Article VI.B.1 or VII.D.1 . . . elects not to participate in the proposed operation, then, in order to be entitled to the benefits of this Article, the party or parties giving the notice and such other parties as shall elect to participate in the operation shall, within ninety (90) days after the expiration of the notice period of thirty (30) days . . . actually commence the proposed operation and complete it with due diligence."

3

**{4}** If Echo failed to commence drilling operations by the end of the period, the proposal would fail, and all parties to the JOA would be returned to the status they had prior to the proposal's circulation. If Echo chose to proceed with that well again, Echo would be required to resubmit another proposal to all interested parties. At that point, Enduro would have an opportunity to become a consenting interest capable of receiving proceeds of the well from the time it began producing. Echo drilled and finished the well after the 120-day period without ever resubmitting a proposal, which Enduro believes was improper under the JOA.

**{5}** Echo sent its proposal to drill Well 6H to the working interest owners on December 1, 2010. Conoco received Echo's proposal, and elected not to participate on December 28, 2010, thus becoming a non-consent party. Enduro subsequently purchased Conoco's interest in Well 6H subject to its non-consent status.

**{6}** As more thoroughly discussed below, the well was not drilled within the 120-day period, although Echo continued operations related to drilling Well 6H past the 120-day period from its initial notice, and eventually drilled a producing well.

**{7}** Enduro brought suit against Echo and the other working interest owners for breach of contract, trespass, conversion, violations of the New Mexico Oil and Gas Proceeds Payment Act, and declaratory relief.[5] Enduro asserted that Echo failed to "commence" operations and was therefore required to resubmit the proposal, thereby providing Enduro an opportunity to consent to Echo's proposal and receive proceeds from the well. Enduro based its claims on the language in Article IV of the JOA that provides, "if the actual operation has not been commenced within the time provided . . . and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties . . . as if no prior proposal had been made." Only Enduro and Echo remain as parties in the proceedings on appeal.

**{8}** Litigation ensued, and Enduro and Echo filed a series of motions. Enduro filed three separate motions for partial summary judgment. The first motion is not at issue in this appeal.[6] Enduro's second motion for partial summary judgment asserted that without having obtained the appropriate drilling permit prior to the expiration of the 120-day deadline, Echo could not legally have commenced drilling operations. The district court denied this motion. Enduro's third motion for partial summary judgment asserted that Echo's actions during the 120-day period did not constitute the actual commencement of operations required by the JOA.

---

[5]Enduro later amended its complaint, dropping its trespass claim.

[6]Enduro requested partial summary judgment arguing that Echo was not entitled to use an exculpatory clause in the JOA.

**{9}** Echo filed a motion for summary judgment, asserting that the undisputed facts established that it had commenced Well 6H during the 120-day period and completed the well with due diligence, entitling it to judgment as a matter of law. Echo also filed a motion to exclude the testimony of Phillip T. Brewer, who Enduro sought to qualify as an expert in the area of custom and usage of the oil and gas industry in southeast New Mexico, specifically.

**{10}** The district court held a hearing on these motions, during which it granted Echo's motion to exclude Brewer's testimony. The court later issued a letter decision denying Enduro's first two motions for partial summary judgment and granting Echo's third such motion for summary judgment. Enduro appeals the district court's grant of summary judgment to Echo as well as its exclusion of its expert Brewer's testimony.

## II.    DISCUSSION

### A.    Summary Judgment—Commencement

### 1.    Summary Judgment Standard on Appeal

**{11}** Summary judgment is appropriate where the movant is entitled to judgment as a matter of law and there is no genuine issue as to any material facts. Rule 1-056(C) NMRA. In other words, if the facts are not in dispute and only the legal effect of those facts is left to be determined, summary judgment is proper. *Garrity v. Overland Sheepskin Co. of Taos*, 1996-NMSC-032, ¶ 29, 121 N.M. 710, 917 P.2d 1382. "Where cross-motions for summary judgment are presented on the basis of a common legal issue, this Court may reverse both the grant of one party's motion and the denial of the opposing party's cross-motion and award judgment on the cross-motion." *Grisham v. Allstate Ins. Co.*, 1999-NMCA-153, ¶ 2, 128 N.M. 340, 992 P.2d 891. "We resolve all reasonable inferences in favor of the party opposing summary judgment, and we view the pleadings, affidavits, depositions, answers to interrogatories, and admissions in the light most favorable to a trial on the merits." *Madrid v. Brinker Rest. Corp.*, 2016-NMSC-003, ¶ 16, 363 P.3d 1197 (internal quotation marks and citation omitted). Our courts disfavor summary judgment and view it as a drastic remedy that should be used with great caution. *Id.*

**{12}** "Where the [district] court's grant of summary judgment is founded on a mistake of law, the case should be remanded so that the issues may be resolved through application of correct law." *Rummel v. St. Paul Surplus Lines Ins. Co.*, 1997-NMSC-042, ¶ 9, 123 N.M. 767, 945 P.2d 985. On appeal, neither party argues that genuine issues of material fact exist. The dates and extent of Echo's activities to drill the well are not in dispute. Rather, the parties' argument is based in the legal effect of those facts; we therefore review the district court's orders regarding the summary judgment motions de novo. *See Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582; *State Farm Mut. Auto. Ins. Co. v. Barker*, 2004-NMCA-105, ¶ 4, 136 N.M. 211, 96 P.3d 336.

## 2.     Actual Commencement of Drilling Activities

**{13}**    The central issue in this appeal is whether Echo's actions preparing to drill Well 6H were enough to demonstrate that it "actually commence[d] the proposed operation and complete[d] it with due diligence" within the 120-day period. We must first look to what actions Echo took to commence operations.

### a.     Action Taken

**{14}**    The parties agree on the following facts. The JOA dated April 25, 2006, governs the parties' conduct in this case. On November 29 and 30, 2010, Echo worked with Joe Janica, a geological engineer, to survey and stake Well 6H's location. On December 1, 2010, Echo submitted a proposal to all working interest owners, pursuant to the procedures set forth in the JOA, in which it proposed to drill Well 6H. The 120-day period ended April 2, 2011.

**{15}**    Conoco was an interest owner at the time the proposal was distributed, and it elected to not participate pursuant to the JOA on December 28, 2010. Enduro then purchased Conoco's non-consent interest. Echo applied for a drilling permit that the New Mexico Oil Conservation Division received on March 31, 2011. The permit was approved on April 13, 2011. The parties agree that the relevant 120-day period ended April 2, 2011. We consider only actions taken up to that point in our consideration of whether Echo commenced drilling activities within the 120-day period.

**{16}**    In support of its motion, Echo proffered evidence that in order to complete the required permits, they conducted surveys, staked the site, designed a closed loop system, and obtained a drilling procedure, spud program, and casing program. The road to the site was pre-existing at the time of the survey, prior to the proposal. In early March 2011, Echo communicated with John Thoma, a geologist, regarding the design and engineering of a lateral for Well 6H.[7] Echo contracted to build a drill pad on April 29, 2011, and entered into a drilling contract with JW Drilling, Inc. on March 14, 2011, to commence on May 20, 2011. The well was spudded on May 25, 2011, fracked from July 5 through 7, and began production on August 5, 2011.

## 3.     Legal Standard for Commencement

**{17}**    The parties are also in agreement that *Johnson* is the most applicable New Mexico authority on this issue. They differ, however, on its interpretation and the effect that it has on the facts of this case. Echo contends that the district court reached the correct result, focusing on the language of *Johnson* that suggests "*any* activities in preparation for, or

---

[7]Although Echo asserts that this consultation lasted from December 2010 until Well 6H was completed, the evidence proffered in support of Haggart's affidavit is dated March 6, 2011.

incidental to, drilling a well are sufficient" to reach the conclusion that it commenced drilling under the JOA. 1999-NMCA-066, ¶ 11 (emphasis added). Enduro, on the other hand, insists that *Johnson* stands for the proposition that the existence of *meaningful* on-site activity is determinative to the issue of commencement. *Johnson* fairly gives both impressions; we need to clarify our position.

**{18}**    In *Johnson*, this Court looked at the propriety of summary judgment granted for failure to diligently continue to prosecute drilling operations rather than initiate new operations as in this case. *Id.* ¶ 8. The lease in that case required the commencement and prosecution of drilling operations, to completion of a well without cessation for a certain time period. *Id.* ¶ 5. The actions taken by the operator during that time period included staking and surveying the location and filing and receiving a drilling permit. *Id.* ¶ 7. There was also an agreement with a contractor, a bulldozer on location, and efforts made to clear brush and level the well location within the time period. *Id.* We framed the issue as a determination of whether those actions were sufficient to demonstrate commencement of drilling operations. *Id.* ¶ 11. Reasoning that most courts "have been ready to find the commencement of operations . . . where only the most modest preparations for drilling have been made[,]" *id.* (internal quotation marks and citation omitted)," we noted that "it appears that any activities in preparation for, or incidental to, drilling a well are sufficient." *Id.* Using this standard, this Court held that the steps taken in *Johnson* were sufficient to constitute commencement of drilling activities, reversing the district court's grant of summary judgment. *Id.* ¶ 13.

### 4.    **Echo Did Not "Actually Commence"**

**{19}**    As noted, the parties pull different standards from *Johnson* to be applied in this case. Echo suggests that we implement a standard for commencement that is satisfied where there has been "minimal activity on the premises," while Enduro suggests that "meaningful on-site activity" may suffice. Without explicitly adopting either of these standards, we can affirmatively state that Echo's actions during the relevant 120-day period do not satisfy the indicia of commencement that existed in *Johnson*. Here, as in *Johnson*, the well location was surveyed and staked, and steps were taken to apply for the necessary permits. In this case, however, the only additional step taken during the relevant period was to enter into a contract with a drilling company. No on-site activity occurred other than the survey and staking Echo completed before the proposal date. Echo's permit application was not approved within the 120-day period. In contrast, the proposing party in *Johnson* obtained approval of the necessary permits, moved heavy equipment onto the well site, and took steps to clear brush and level the ground at the well location.

**{20}**    Citing 3 Eugene Kuntz, *A Treatise on the Law of Oil and Gas*, § 32.3(b), at 76 (1989), Echo notes that for commencement to occur, "some act performed on the land itself" is required. And the cases cited by *Johnson* appear to support this statement. For example, *Petersen v. Robinson Oil & Gas Co.*, 356 S.W.2d 217 (Tex. Civ. App. 1962), enunciated a standard given the facts in that case:

The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease.

*Id.* at 220 (internal quotation marks and citation omitted).

**{21}**    In *Oelze v. Key Drilling, Inc.*, the driller had obtained a drilling permit, staked the well location, leveled a well site, and dug slush pits. 481 N.E.2d 801, 802 (Ill. App. Ct. 1985). *D'lo Royalties, Inc. v. Shell Oil Co.* dealt with "diligence" more than the other cases, but held that preliminary site work that proceeded with diligence as well as actual diligence in starting actual drilling, along with paying a "shut-in" royalty payment was sufficient to constitute commencement of drilling. 389 F. Supp. 538, 548-49 (S.D. Miss. 1975). The conclusion we reach here is, we believe, implied by *Johnson*'s use of these cases in concert with 3 Kuntz, *supra*, § 32.3(b), at 76.

**{22}**    Two facts in particular weigh heavily in our determination in this case—the lack of any on-site activity and Echo's failure to obtain—or even apply for until two days before expiration of the 120-day period—approved permits during the 120-day period. Though it did spend two days surveying and staking the Well 6H location—the only on-site activity it accomplished—it did so prior to sending out the proposal that triggered the 120-day period. The fact that Echo had no approved permit to drill prior to the end of the 120-day period is also important to our determination in this case. 19.15.14 NMAC was created in order to "require an operator to obtain a permit *prior to commencing* drilling[.]" 19.15.14.6 NMAC (emphasis added). It would have been contrary to the rule for Echo to commence drilling prior to approval of the permit. As such, it follows that to conclude Echo's actions were adequate to constitute commencement of drilling would be to condone Echo's commencing to drill an unauthorized, unpermitted well.

**{23}**    Echo argues that in this day of lateral drilling, fracking, and "more complex engineering design and preparation than in the days when drilling a well meant simply erecting a derrick and boring a vertical hole[,]" changed circumstances demand a reconsideration of what constitutes preparing for drilling. Echo emphasizes the "back-room" work required to get a well underway and characterizes Enduro's position as asserting that only activities on the ground count toward commencement of drilling. We disagree with that characterization and with the proposition Echo advances. First, we note that the only material change in the language of A.A.P.L. Form 610 with regard to commencement since 1977 has been to extend what was a sixty-day period for commencement to ninety days following the notice period, both reflected in the agreement used in this case, and as amended in 1989. *See Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶¶ 3, 15 nn.1 & 2, 123 N.M. 526, 943 P.2d 560 (quoting language from A.A.P.L. Form 610-1977 and -

8

1989). A.A.P.L. Form 610 is an unambiguous contract, and it is not for the courts to change contract language for the benefit of one party to the detriment of another. *Nearburg*, 1997-NMCA-069, ¶ 23. No changes in the industry have resulted in any change to the form language of the contract since 1982, including 1997 when we decided *Nearburg*, through to the present case. This consideration, paired with the lack of any on-site activity during the 120-day period, leads us to conclude that it is no new interpretation of the contract form by which we hold that Echo's on-site actions were not meaningful and cannot seriously be characterized as minimal.[8]

**{24}**     In *Johnson*, the drilling party "staked and surveyed the location, applied for and received a permit to drill the well, and began preparing and building the well location prior to the expiration of the primary term." 1999-NMCA-066, ¶ 12, Accordingly, we adopted the view that completing some and undertaking other on-site actions ancillary to actual drilling can, in some situations, be adequate to amount to commencement. *Id.* We have no quarrel with that proposition.

**{25}**     It is unclear from the record what standard the district court applied in this case when reaching its conclusion. *See George v. Caton*, 1979-NMCA-028, ¶ 6, 93 N.M. 370, 600 P.2d 822 (noting that while a district court is not required to state its reasons or make findings, findings are permissible and often helpful for appellate review). It appears, however, that the district court read the language in *Johnson* quite literally that *any* activity is sufficient to constitute commencement. Through this reading, the district court disregarded the utter lack of any on-site activity during the 120-day period in this case. Consequently, we believe that a literal interpretation of "any," resulted in too liberal a standard and disregarded how removed the actions taken by Echo in this case might be from actual drilling.[9] We instead believe the correct standard to be applied in this case, more reasonably drawn from *Johnson*, is that undertaking meaningful on-site actions ancillary to actual drilling can, under some circumstances, amount to commencement, but each case requires an individual analysis of the actions taken by the proposed driller. For the reasons that follow, we do not regard the facts and circumstances in this case as such that Echo's actions can be characterized as "commencement" as required by the JOA.

---

[8]Because we conclude that Echo did not commence the proposed operation within the time period specified in the JOA, we need not address the issue of whether it completed the well with due diligence.

[9]Echo attempts to make a distinction between the "drilling operations" referenced in *Johnson* and "proposed operation" referenced in the JOA. Contrary to Echo's assertion that the JOA "omits any reference to drilling," the JOA includes a desire "to drill, rework, . . . deepen or plug back" as actions that could constitute a "proposed operation." Echo does not actually assert that the act to be commenced in this case is anything other than the drilling of a new well. We therefore find any distinction that Echo attempts to draw between the terms to be unpersuasive.

**{26}** While the facts of this case are only somewhat similar to those of *Johnson*, they are very similar to the facts of *Valence Operating Co. v. Anadarko Petroleum Corp.*, 303 S.W.3d 435 (Tex. App. 2010). Echo disparages *Valence*, insinuating that *Nearburg* did not agree with its analysis and that this Court rejects Texas oil and gas law decisions. We note three problems with Echo's contention. First, the quotation Echo uses ("We do not agree with the [Texas] Court's analysis[.]") substituted "Texas" for the true case cited (*Hamilton v. Texas Oil & Gas Corp.*, 648 S.W.2d 316 (Tex. App. 1982)). Nowhere in *Nearburg* is *Valence* cited. *See Nearburg*, 1997-NMCA-069, ¶ 10. Second, although Echo does not think that *Peterson* makes sense in today's world, as we pointed out above, this Court relied in *Johnson* on the very Texas case Echo did not cite, namely *Hamilton*, for the standard of commencement that it enunciated. Last, *Nearburg* had nothing at all to do with what actions fulfill the commencement clause. While we realize Echo's need to emphasize the quality of its "back-room" preparation—preparations specifically rejected by *Valence* as sufficient to find "commencement" of drilling operations—these generic and inapposite quotations are misleading. Echo's argument that "nothing" in *Johnson* indicates that Echo's efforts should not be considered the commencement of operations is belied by the fact that while the operators in *Johnson* and in *Valence* obtained a permit to drill, Echo never did. *Valence* is specific about the effect of relying on "back-room" preparatory activity to substitute for failure to engage in on-site preparations to commence drilling a well. 303 S.W.3d at 441. It does not constitute the "commencement" of drilling activities.

**{27}** In *Valence*, the Texas court of appeals was asked to interpret a non-consent provision in a joint operating agreement that was virtually identical to the one in this case. *Id.* at 438-39. That non-consent provision set forth the same time period for *Valence*, the non-operator, to "actually commence work on the proposed operation" as Echo had under the JOA here. *Id.* at 439-40 (internal quotation marks omitted). During the relevant time period, the appellant obtained a topographic map of the well locations and a preliminary list of instruments, staked the well location, held meetings regarding how to build on the well location, prepared cost estimates, and got the necessary drilling permits. *Id.* at 440. All other work, including building roads, restaking the well location, signing drilling contracts, and actual drilling, were done outside of the time period prescribed by the joint operating agreement. *Id.* The Texas court acknowledged that actual drilling is not necessary to comply with an obligation to commence drilling operations and preparatory activities are usually sufficient in that regard. *Id.* It went on, however, to characterize the appellant's activities as "back[-]room preparations," noting that no on-site activity except that preliminary staking had occurred, and concluded that such preliminary activities alone were insufficient to constitute the actual commencement of work under the joint operating agreement as a matter of law. *Id.* at 441.

**{28}** The facts of this case are much the same as those presented in *Valence*, except that rather than obtain the necessary drilling permits prior to the expiration of the deadline, Echo signed a drilling contract instead and applied for a permit in the waning days of the 120-day period. Neither case contains facts in which any on-site activity occurred, other than preliminary staking. In *Valence*, the non-operator at least obtained drilling permits for all

10

wells prior to the expiration of the deadline, making it at least possible that drilling could take place. We find the reasoning in that case persuasive and consistent with *Johnson*.

**{29}** It appears that the district court read the language in *Johnson* quite literally to hold that *any* activity is sufficient to constitute commencement; a standard with which we disagree. The lack of any on-site activity during the 120-day period in this case, as a matter of law, cannot support summary judgment based upon Echo having "commenced" drilling operations. "Back-room" preparations, engineering plans, and especially obtaining drilling permits are important, but the emphasis of time limits in the JOA is to timely undertake the process by which a well is spud, which is a physical event occurring on the well site. Allowing "any" preparations to count as commencement of drilling, however removed those actions are from on-site preparations for drilling, is a mistake. We instead believe the correct standard to be applied in this case, drawn from *Johnson* and other authorities cited above, is that undertaking on-site actions that may be ancillary to actual drilling, to an extent that meaningfully demonstrates a diligent intent to undertake actual drilling within the time limit of the commencement clause, will be satisfactory to fulfill the operator's obligations. Further, under most circumstances that meaningful progress would also include having a drilling permit in hand. By this measure, the facts and circumstances in this case are not such that Echo's actions can be characterized as "commencement" as required by the JOA, and indeed they fail as a matter of law. We accordingly reverse the summary judgment granted by the district court, and remand for entry of summary judgment for Enduro on its motion that maintained Echo had not commenced drilling operations as required.

**B.     Attorney's Fees**

**{30}** Enduro also raises issues on appeal pertaining to the district court's award of attorney's fees. Because our disposition of the issues above alters the grounds on which attorney's fees were awarded, we decline to address the issue of attorney's fees in this appeal.

**III.     CONCLUSION**

**{31}** Having determined that the district court misinterpreted *Johnson* to reach an incorrect result, and that Echo's progress to "actual commencement" of drilling was insufficient as a matter of law to satisfy the JOA's requirements, we conclude that judgment as a matter of law was proper, but that Enduro is the prevailing party. We therefore reverse the district court and remand for further proceedings consistent with this opinion.

**{32}     IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**J. MILES HANISEE, Judge**