# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-2103

_____

Westfield Insurance Company,

*Plaintiff - Appellee*

v.

Advanced Auto Transport, Inc.; Gregory Lester Hansen; Indian Harbor Insurance Company,

*Defendants*,

Carolina Casualty Insurance Company,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 17, 2021
Filed: August 30, 2021

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Gregory Hansen, a driver working for Advanced Auto Transport, Inc., was involved in an accident with Brady Gartner. Hansen was driving a truck owned by Worldwide Equipment, Inc. Gartner's parents sued Hansen, Advanced Auto, and Worldwide for personal injury damages. Advanced Auto and Hansen tendered the suit to Worldwide's insurer, Westfield Insurance Co., for defense and indemnity. Westfield Insurance denied the tender, and sought a declaratory judgment that it owed no obligations to Advanced Auto, Hansen, or their insurer, Carolina Casualty Insurance Co. The district court[1] granted summary judgment to Westfield Insurance, and Carolina Casualty appeals. Because we agree that neither Hansen nor Advanced Auto was an "insured" under the policy that Westfield Insurance issued to Worldwide, we affirm.

I.

In 2015, Rumpke Consolidated Companies ordered a garbage truck from Worldwide, a Mack Trucks dealership. Worldwide purchased a power unit (a cab and chassis) from Mack Trucks. Rumpke separately contracted with McNeilus Truck and Manufacturing to convert the power unit into a garbage truck. Mack Trucks manufactured the power unit and transferred ownership of the unit to Worldwide, but Mack Trucks delivered the power unit directly to a McNeilus facility in Minnesota for conversion into a garbage truck, a process known as "upfitting."

McNeilus converted the truck in Minnesota, then contracted for Advanced Auto to transport the truck to another McNeilus facility in Ohio for inspection. Pursuant to a "Master Drive-Away Service Agreement," Advanced Auto provided a

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

driver to transport the truck from the McNeilus facility in Minnesota to the McNeilus facility in Ohio. McNeilus instructed Advanced Auto where to pick up and deliver the truck. Advanced Auto gave the driver a bill of lading, which Advanced Auto would then provide to McNeilus in Ohio as proof of delivery. If the truck had reached the McNeilus facility in Ohio, McNeilus would have inspected the truck and returned it to Worldwide. Worldwide would have performed a final inspection of the power unit and then delivered the truck to the end purchaser, Rumpke.

The Master Drive-Away Service Agreement gave McNeilus certain rights to direct the performances of Hansen and Advanced Auto. Hansen was required to deliver the truck with a full tank of fuel, and was forbidden to smoke, transport passengers, or use tire chains on the truck. Advanced Auto was required to accept or deny McNeilus's delivery requests within two hours, and to pick up vehicles within one day of tender. Advanced Auto also was required to identify the truck with its Department of Transportation number, and to "maintain in effect commercial insurances," including "[b]usiness auto liability insurance, covering all . . . non-owned autos" against bodily injury claims.

The agreement also specified that the "relationship of [McNeilus] and [Advanced Auto] is that of an independent contractor." The parties did not "intend to clothe [McNeilus] with joint control over [Advanced Auto]'s performance of" its services, and explained that "[u]nder no circumstances shall employees or agents of [Advanced Auto] be deemed employees or agents of [McNeilus]."

Hansen of Advanced Auto picked up the truck from McNeilus in Minnesota on February 18, 2016. Later that day, he was involved in an accident with Gartner in Olmstead County, Minnesota. Gartner's parents were appointed as his conservators. They sued Worldwide, Advanced Auto, and Hansen to recover damages on Gartner's behalf.

-3-

Advanced Auto tendered the suit to Westfield Insurance, asserting that Westfield Insurance was responsible for defending and indemnifying Advanced Auto and Hansen. Because Westfield Insurance covered vehicles owned by Worldwide, and Advanced Auto and Hansen were permissive users of a vehicle owned by Worldwide, Advanced Auto maintained that Westfield Insurance should provide defense and coverage. Westfield Insurance denied the tender and sued for a declaration that it owed no obligations to Advanced Auto, Hansen, or Carolina Casualty (the insurer of Advanced Auto) under the Westfield Insurance policy issued to Worldwide.

Worldwide's insurance policy with Westfield Insurance provided liability coverage for "garage operations," which "includes the ownership, maintenance or use" of "covered 'autos.'" Worldwide owned the truck involved in the accident, so it was a covered auto. The policy provides that anyone using a vehicle owned by Worldwide with permission is an "insured," with certain exceptions.

The dispute centers on an exception: the policy excludes from the definition of "insured" someone "using a covered 'auto' while he or she is working in a business of selling, servicing or repairing 'autos' unless that business is [Worldwide's] 'garage operations.'" The district court concluded that McNeilus was "in the business of 'selling, servicing or repairing autos.'" Because Advanced Auto was delivering the truck on behalf of McNeilus when the accident occurred, the court ruled that Advanced Auto was "working in a business of selling, servicing or repairing 'autos.'" Therefore, the exception in Worldwide's policy applied, and Westfield Insurance had no duty to defend or indemnify Advanced Auto or Hansen. The court granted Westfield Insurance's motion for summary judgment, and we review the decision *de novo*. *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008).

II.

On appeal, Carolina Casualty (the insurance carrier for Advanced Auto) argues that Westfield Insurance (the insurance carrier for Worldwide) owes a duty to defend and indemnify Advanced Auto and Hansen because they were using a covered auto owned by Worldwide at the time of the accident. Carolina Casualty maintains that the disputed exception to the definition of "insured" in Worldwide's policy does not apply, because Advanced Auto and Hansen were not "working in a business of selling, servicing or repairing 'autos.'"

The parties agree that Minnesota law applies. *See Babinski v. Am. Fam. Ins. Grp.*, 569 F.3d 349, 351-52 (8th Cir. 2009). Although the disputed exception appears in the "Coverage" section of the policy, the parties appear to agree that it functions as an "exclusion." In Minnesota, a party claiming insurance coverage bears the burden of establishing that coverage applies; the insurer bears the burden of proving the applicability of exclusions. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Even so, exclusions in a policy "are as much a part of the contract as other parts thereof and must be given the same consideration in determining what is the coverage." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998) (quoting *Bobich v. Oja*, 104 N.W.2d 19, 24-25 (Minn. 1960)). Exclusions are "construed narrowly and strictly against the insurer," *Bloomington Steel*, 718 N.W.2d at 894, but at the same time, "the court has no right to read an ambiguity into the plain language of an insurance policy." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn. 1992).

To recapitulate the key provisions of the policy, Westfield Insurance provides coverage to Worldwide for "damages because of 'bodily injury' . . . caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos.'" "Insureds" include "[a]nyone . . . while using with [Worldwide's] permission a covered 'auto'" owned by Worldwide, with certain

-5-

exceptions. One exception is "[s]omeone using a covered 'auto' while he or she is working in a business of selling, servicing or repairing 'autos' unless that business is [Worldwide's] 'garage operations.'"

The exception at issue is a form of "business use exclusion." "Policies often exclude coverage if the vehicle is being used in the course of a business activity because injuries involving business related activities involve greater risks to the insurer." 24 *Appleman on Insurance Law & Practice* § 148.4[J] (2d ed. 2011). The exception here is grounded "in the assumption that when an insured automobile is turned over to an independent automobile business for servicing . . . , it is likely to be driven by an agent of that business over whom the insured has no control." *Grisham v. Allstate Ins. Co.*, 992 P.2d 891, 893 (N.M. Ct. App. 1999). As the Minnesota Supreme Court put it: "The owner does not grant permission to these individuals. Individually they are usually unknown to him. They are in quite a distinct group from persons to whom an ordinary assured usually gives permission to drive his car." *Wendt v. Wallace*, 240 N.W. 470, 471 (Minn. 1932). In other words, as applied to the facts of this case, when Worldwide turned over the truck to McNeilus, Worldwide had no control over who was driving the truck until McNeilus finished its work and returned the truck to Worldwide.

Carolina Casualty argues, however, that Advanced Auto and Hansen were not "working in a business of selling [or] servicing" autos, because they were independent contractors who were in a separate business of transporting autos. McNeilus was indisputably working in a business of selling or servicing vehicles. But Carolina Casualty contends that the exception is inapplicable here because although Hansen and Advanced Auto were enlisted by McNeilus to transport the truck, they were not employed by or subject to the control of McNeilus. On that view, Hansen and Advanced Auto are insured under Westfield Insurance's policy as permissive users of Worldwide's vehicle, and not subject to the exception that would

-6-

apply to McNeilus if McNeilus's own employee had transported the truck from Minnesota to Ohio.

Several courts that have considered similarly worded provisions have applied a functional approach that examines whether the party operating the vehicle is acting in the commercial interest of a business that services or repairs autos. The New Mexico appellate court in *Grisham* determined that "'[w]orking in the business' for the purpose of an automobile business exclusion includes activities that are an integral and necessary part of the automobile business." 992 P.2d at 895. Therefore, a "driver need not be an employee of the automobile business to fall within the exclusion as long as the driver is acting on behalf of the automobile business." *Id.*

The Fifth Circuit in *Mahaffey v. General Security Insurance Co.*, 543 F.3d 738 (5th Cir. 2008) (per curiam), similarly reasoned that a vehicle was "used in the business" of a lessee when the vehicle's stand-by driver was involved in accident on the way to a motel for the night. The court concluded that the driver was "furthering [the lessee's] commercial interests to have a driver on standby," so the driver was "acting in the business" of the lessee. *Id.* at 742-43. *Mahaffey* cited the "commercial interest" test from *Empire Fire & Marine Insurance Co. v. Brantley Trucking, Inc.*, 220 F.3d 679 (5th Cir. 2000), where a vehicle was "used in the business" of a lessee when the driver took a truck for servicing while waiting for the lessee to load cargo. The *Empire Fire* court concluded that the exclusion applied because the truck was "used to further the commercial interests of the lessee," and the driver's actions were "in furtherance of [the lessee]'s business." *Id.* at 682. The Seventh Circuit likewise concluded that a provision excluding coverage while a truck "is being used in the business of an . . . organization to whom the automobile is rented" is one that "clearly refers to occasions when the truck is being used to further the commercial interests of the lessee." *Hartford Ins. Co. of Se. v. Occidental Fire & Cas. Co. of N.C.*, 908 F.2d 235, 239 (7th Cir. 1990); *see also Forkwar v. Empire Fire & Marine Ins. Co.*, 487 F. App'x 775, 780 (4th Cir. 2012) (holding that business use exception for an

auto "used in the business" of a lessee applied where independent contractor's conduct at the time of the accident "furthered the commercial interest" of the lessee).

We think these cases illustrate the better approach to this type of provision, and that the Minnesota courts likely would adopt it. The phrase "working in a business" of servicing autos does not necessarily mean that the driver of a vehicle is employed by the auto servicing business. Where the driver is acting in furtherance of the commercial interests of the auto servicing business, and performing a function that is an integral part of the auto servicing business, then the vehicle is used in the business, and the driver is "working in" that business. Advanced Auto and Hansen were unknown to the owner of the vehicle, Worldwide. They were performing an essential function for McNeilus in the auto servicing business by transporting the truck from one McNeilus facility to another. Under those circumstances, we agree with the district court that Advanced Auto and Hansen were working in McNeilus's business of auto servicing within the meaning of the policy.

Carolina Casualty says this conclusion cannot be right because it would mean that a courier like FedEx would be "working in a business" of servicing autos if the courier transported an auto part from one McNeilus facility to another. The insurance policy, however, is concerned only with persons who use vehicles owned by the party to whom the policy is issued, and it must be interpreted in that light. Unlike a FedEx courier, Hansen was not driving a truck owned by his employer, but operating a truck owned by Worldwide that McNeilus was in the process of "servicing." The transportation was conducted in connection with, and in furtherance of, a business expressly mentioned in the exception. *Cf. Md. Cas. Co. v. Integrity Ins. Co.*, 693 F.2d 506, 509 (5th Cir. 1982) (per curiam). By moving the truck between McNeilus locations, Hansen and Advanced Auto were using the truck to conduct an integral part of McNeilus's servicing operation, and they were thus "working in a business of . . . servicing . . . 'autos.'"

Carolina Casualty argues that if Advanced Auto and Hansen were "working in" McNeilus's business, then they also were working in Worldwide's garage operations, so there would be an exception to the exception. A driver is not insured if he is working in a business of servicing autos, "unless that business is [the insured party's] 'garage operations.'" "Garage operations" include "the ownership, maintenance or use of . . . covered 'autos,'" and "all operations necessary or incidental to a garage business." Carolina Casualty contends that delivery of the truck to Ohio was a "necessary and essential part" of Worldwide's garage operations, because McNeilus would have transferred the truck from its Ohio facility to Worldwide for a final inspection before Worldwide delivered it to Rumpke.

We reject this contention because the "business of . . . servicing" in which Hansen and Advanced Auto were working was McNeilus's servicing business, not Worldwide's "garage operations." Worldwide's business was to deliver a Mack "power unit"—a cab and chassis—to Rumpke. Rumpke contracted separately with McNeilus to convert that power unit into a garbage truck; Worldwide played no part in that contract or in McNeilus's choice of Advanced Auto to transport the truck within McNeilus's operations. Hansen and Advanced Auto were delivering a vehicle to McNeilus for a final inspection of a garbage packer unit, a matter that was integral to McNeilus's business. That inspection, and the rest of McNeilus's upfitting operations, were not integral to Worldwide's business, so Hansen and Advanced Auto were not working in Worldwide's "garage operations."

\* \* \*

The judgment of the district court is affirmed.

_____